* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II-B of the DISCUSSION.
[EDITORS' NOTE: THE TEXT OF THIS MODIFIED AND REPRINTED. SEE160 Cal.App.4th 1.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 812 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 813 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 814 
OPINION
In this case alleging employment relationships gone awry, plaintiffs Joaquin Noble (Noble), Jose Antonio Hernandez, Manuel Moreno, and Maria de Lourdes Rios de Noble (Maria Noble) appeal from a judgment entered in favor of defendants Martha Draper and Velasco, Inc., doing business as Cha-Cha's Cocina Mexicana, following the trial court's granting of defense motions for separate trial of special defenses (Code Civ. Proc., § 597) and for judgment on the pleadings. We shall conclude the judgment must be reversed in part, because this civil action by some of the plaintiffs (Noble and Hernandez), alleging fraudulent inducement to enter employment, is not precluded by their prior pursuit of wage claims in an administrative forum before the Labor Commissioner pursuant to Labor Code section 98 et seq.[1] We shall also conclude Moreno's claims are precluded by the Labor Commissioner's conclusion that he was not an employee, and we shall therefore affirm the judgment against Moreno. We shall also affirm judgment on the pleadings entered in favor of defendants as to a cause of action for intentional infliction of emotional distress, and we therefore affirm the judgment against Maria Noble, who was a plaintiff only as to this count.
 FACTUAL AND PROCEDURAL BACKGROUND
In December 2004, plaintiffs (and Esteban Salazar, whom we do not discuss because he dismissed his case with prejudice and is not a party to this appeal) filed a complaint asserting eight counts: The first three counts (breach of contract, statutory violation of overtime wage law, and breach of contract of good faith and fair dealing) were brought by Moreno alone, and they were dismissed with prejudice at his request on the day set for trial. We therefore need not discuss them.
The other counts were:
(4) fraud by intentional misrepresentation; *Page 815 
(5) fraud by negligent misrepresentation;
(6) false advertising;
(7) unfair business practices (Bus. Prof. Code, § 17200); and
(8) intentional infliction of emotional distress by Noble and Maria Noble.
The eighth count is the only count to which Maria Noble is a party. Accordingly, our reference to "plaintiffs" in this opinion excludes Maria Noble, except in our discussion of the eighth count.
The complaint alleged Noble, Maria Noble, and Jose Hernandez live in Mexico. Moreno lives in Sacramento County.
The complaint alleged plaintiffs lived and worked in Mexico before being "induced" by Draper to come to the United States (USA) to work in defendants' restaurant in Placer County. The complaint alleged: Defendants placed advertisements in Mexican newspapers in November and December 2002, soliciting chefs to work in the USA. Noble, Hernandez, and Moreno (referenced in the complaint as "employees" despite the Labor Commissioner's finding that Moreno was not an employee) responded to the ads by telephoning Draper, who interviewed them by phone and offered them jobs. Draper promised plaintiffs employment, thereby inducing them to quit their jobs in Mexico and incur the expense of traveling to the USA. They worked for defendants for a short period of time before defendants terminated the employment and failed to compensate plaintiffs for their work.
The fourth count, fraud by intentional misrepresentation, alleged that in November and December 2002, to induce plaintiffs to come to work for defendants, defendant Draper told plaintiffs that (1) she would assist them in obtaining legal status to work in the USA; (2) she would pay for their travel to the USA; (3) they would work a normal workweek and enjoy the benefits and protections of the California labor laws; (4) defendants would compensate plaintiffs for their work; and (5) defendants would employ plaintiffs for a substantial period of time to justify the expense and hardship of relocating to the USA. The complaint alleged these representations were false, and Draper knew them to be false and made them with the intent to defraud plaintiffs. In reliance on these representations, plaintiffs were induced to leave Mexico and their jobs there and come to the USA, thereby incurring costs and "substantial hardship." Plaintiffs alleged they "would never have left their respective places of employment and incurred the expense of coming to the United States had they known the falsity of these material representations made by *Page 816 
[Draper]." Plaintiffs claimed they suffered damages including the cost of travel, loss of employment opportunities, anxiety, and increased cost of living.
The fifth count alleged "FRAUD BY NEGLIGENT MISREPRESENTATION" on the same facts.
The sixth count alleged false advertising, in that defendants allegedly offered work in the USA to chefs working in Mexico who "either did or did not have a work visa" to work in the USA, and the advertisements were false in that Draper knew or should have known that plaintiffs would not be able to work in the USA. Plaintiffs incurred the expense of coming to the USA and worked for a short period of time, sharing with defendants their culinary experience and recipes, to defendants' benefit.
The seventh count, for unfair business practices, alleged that the foregoing allegations constituted acts of unfair competition and "other acts of impropriety" under Business and Professions Code section 17200.
The eighth count, by Noble and Maria Noble for intentional infliction of emotional distress, alleged that on March 11, 2004, four days before a Labor Commissioner administrative hearing of Noble's claim for unpaid wages, "an individual associated with defendants" called Maria Noble by telephone and warned her that Noble should not appear to testify against defendants. The caller allegedly revealed he knew the Nobles' address and the name of their daughter and allegedly threatened that if Noble testified, the daughter would be injured.
Although a date was set for jury trial, the entire case was disposed of without a trial. First, the trial court, at Salazar's request, dismissed his entire case with prejudice. The court then dismissed with prejudice, at Moreno's request, the first three counts (in which Moreno was the only plaintiff).
Defense counsel then asked to "revisit" a motion under Code of Civil Procedure sections 597 and 598, to bifurcate and proceed to a court trial on the special defenses of res judicata and collateral estoppel.[2]
Defendants argued that plaintiffs had pursued claims for unpaid wages in an administrative forum before the Labor Commissioner and, having chosen that forum, were precluded from pursuing in a separate civil action any claims that could have been raised in the administrative forum. The defense motion requested judicial notice (which the court granted) of an "ORDER, DECISION, OR *Page 817 
AWARD OF THE LABOR COMMISSIONER" (ODA) as to Noble (named in the ODA as "Noble Coronado"), a separate ODA as to Hernandez (named in the ODA as "Hernandez Cisneros"), and a Labor Commission document labeled, "NOTICE — INVESTIGATION COMPLETED" which rejected Moreno's claim because "[b]ased on the information presented both at the conference and prior to the conference, there was not an employee/employer relationship."
As to Noble, the ODA stated he filed a claim with the Labor Commissioner seeking wages for November, 29, 2002, to February 28, 2003, in the approximate amount of $36,540, plus interest, plus additional wages as a penalty under section 203, which penalizes an employer who fails timely to pay an employee who is discharged or who quits. A hearing was conducted, at which testimony, evidence and arguments were presented. The Labor Commissioner found Noble was employed by defendants as a chef under an oral agreement, from November 29, 2002, until February 28, 2003, when Noble quit. Noble did not give advance notice of his intent to quit, did not return for his final paycheck after 72 hours (as set forth by statute), and did not provide a mailing address, and he was therefore not entitled to statutory penalties. Noble performed services for defendants at the residences of the corporate officers by preparing dishes to be used in the restaurant, assisting in the development of menus, cooking, and cleaning. He lived for free at the Drapers' residence. He helped with preopening duties before the restaurant opened, and then helped supervise employees and performed other duties of a chef. He was not an exempt managerial employee. Noble did not prove his claimed pay rate. Defendants admitted a weekly pay rate of $300 but failed to maintain time and payroll records. The Labor Commissioner ordered defendants to pay Noble $5,760 in back wages, plus $600 in interest.
The ODA regarding Hernandez said he filed a claim for wages of $48,541, plus wages under section 226.7 for failure to provide meal breaks, plus interest, plus the penalty under section 203. A hearing was held at which testimony, evidence, and arguments were presented. The ODA found Hernandez was employed by defendants as executive chef under an oral agreement, from January 18, 2003, until May 27, 2003, when Hernandez quit without notice. He did not return for his last paycheck or leave a mailing address and was therefore not entitled to penalties. The promised rate of compensation was $30,000 per year (less than Hernandez was claiming), with a promised raise once legal resident status was obtained. He performed services at the residence of defendant's corporate officers by preparing dishes to be used in the restaurant, organizing and writing menus, setting up presentation dishes, developing a recipe book, shopping for items and food for the restaurant, and other preopening duties. When the restaurant opened, Hernandez supervised up to 40 staff members, interviewed and trained employees, prepared menus, decorated food for presentation, ordered items, *Page 818 
and made out purchase orders. He performed the duties of an exempt manager or executive employee and was therefore not entitled to the overtime he claimed. He admitted he signed and received cash for checks written to "Cesar Cisneros." Deducting that amount, the hearing officer found defendants owed Hernandez wages totaling $8,182, plus interest.[3]
The trial court initially rejected the special defense of res judicata, but later accepted it, as described in the trial court's written order (which was incorporated by reference in the ensuing judgment): "The Defendants contend that because of the previous decisions of the State Labor Commissioner as to the Plaintiffs, they are precluded from relitigating any issue that was raised and decided in any prior proceedings or that could have been litigated in their original complaints with the Labor Commissioner's office. [Citation.] Counsel for the Defendants additionally raised the contention that under multiple legal theories on which recovery might be predicated one injury gives rise to only one claim for relief citing Slater v. Blackwood (1975) 15 Cal.3d 791
[126 Cal.Rptr. 225, 543 P.2d 593]. The matter having been argued by counsel, the court issued its tentative ruling that the Fourth, Fifth, Sixth and Seventh Causes of Action [misrepresentation claims and unfair business practices] did not meet the criteria for the application of res judicata in that the court questioned whether the complaints contained in those causes of action could have been brought before the State Labor Commissioner." The order went on to describe that, two days later, defense counsel told the court he had advised plaintiff's counsel on the preceding day of an intent to ask the court to revisit the issue on the ground that section 96, subdivision (d), [4] specifically authorizes the Labor Commissioner to handle claims of misrepresentation of the conditions of employment. The trial court accordingly granted the defense motion to dismiss the three misrepresentation claims (counts four, five, and *Page 819 
six) based on res judicata. The court dismissed the unfair practices claim (seventh count) on the ground it was derivative of the misrepresentation claims.
The trial court also issued a written order granting judgment on the pleadings as to the eighth count (intentional infliction of emotional distress), stating, "The court noted that you cannot tell from the pleadings where the events alleged took place, the identity of the person complained of, and did not put anyone on notice about who did what or when or where. Counsel for the Plaintiffs . . . stated for the record that the Plaintiffs did not know who committed the actions complained of."
Plaintiffs appeal from the ensuing "JUDGMENT ON PRETRIAL ORDERS," which stated (1) Salazar's claims were dismissed with prejudice at his request; (2) Moreno's contract claims (first, second, and third counts) were dismissed with prejudice at his request; (3) the fourth, fifth, sixth, and seventh counts were dismissed under the doctrines of res judicata and collateral estoppel; and (4) judgment on the pleadings was entered in favor of defendants on the eighth count for intentional infliction of emotional distress.
 DISCUSSION
I. Standard of Review
On appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo. (Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 166 [59 Cal.Rptr.3d 142, 158 P.3d 718].) In reviewing the trial court's ruling to dismiss the fourth, fifth, sixth and seventh counts on the grounds of res judicata and collateral estoppel, we apply de novo review since the matter presents a question of law. (Ghirardo v. Antonioli
(1994) 8 Cal.4th 791, 800-801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)
II. Res Judicata/Collateral Estoppel
Plaintiffs contend the trial court erred in concluding that res judicata and collateral estoppel barred the claims for fraud, negligent misrepresentation, false advertising, and the derivative unfair business practices claim (collectively, the misrepresentation claims). We shall conclude collateral estoppel does not apply here (except as to Moreno, whom we discuss post.) As to the claim preclusion aspect of res judicata, we shall conclude that, even assuming defendants are correct that the wage claims and misrepresentation claims involved the same primary right, res judicata does not apply because the Labor Commissioner lacked jurisdiction over the misrepresentation claims. *Page 820 
A. Noble and Hernandez
(1) "`Res judicata' [claim preclusion] describes the preclusive effect of a final judgment on the merits. Res judicata . . . prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel [issue preclusion] `precludes relitigation of issues argued and decided in prior proceedings.' [Citation and fn. omitted.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action. [¶] A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. `"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.]" (Mycogen Corp. v. Monsanto Co. (2002)28 Cal.4th 888, 896-897 [123 Cal.Rptr.2d 432, 51 P.3d 297].)
Whereas res judicata bars claims that could have been raised in the first proceeding regardless of whether or not they were raised (TorreyPines Bank v. Superior Court (1989) 216 Cal.App.3d 813, 821 [265 Cal.Rptr. 217]), collateral estoppel bars only issues that were actually and necessarily decided in the earlier litigation.[5] (Peoplev. Garcia, supra, 39 Cal.4th at p. 1076.)
Res judicata and collateral estoppel can be applied to administrative decisions generally. "[U]nless a party to a quasi-judicial administrative agency proceeding challenges the adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (Johnson v. City of Loma Linda
(2000) 24 Cal.4th 61, 65 [99 Cal.Rptr.2d 316, 5 P.3d 874].) "`[C]ollateral estoppel may be applied to decisions made by administrative agencies "[when] an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. . . . "' [Citations.]" (People v. Garcia, supra, 39 Cal.4th at pp. 1076-1077.) Labor Commissioner hearings under section 96 meet this standard.
Res judicata and collateral estoppel additionally have specific application to Labor Commissioner decisions on wage claims under section 98, by virtue *Page 821 
of section 98.2, [6] which gives the administrative order the force of a final, binding judgment in the event (as was the case here) the losing party does not seek judicial review of the administrative order.[7]
However, res judicata will bar a lawsuit only if the claim could have been raised in the prior proceeding. (People v. Damon (1996)51 Cal.App.4th 958, 974-975 [59 Cal.Rptr.2d 504].)
Here, defendants have failed to show the Labor Commissioner had jurisdiction to adjudicate the claims plaintiffs allege in this lawsuit — fraud, negligent misrepresentation, false advertising, and a statutory claim of unfair business practices under the Business and Professions Code, all arising from defendants allegedly inducing plaintiffs to enter an employment contract. The jurisdictional authority for the claims that were administratively adjudicated is found in section 98, [8] which is limited to claims for "wages, penalties, and other demands for compensation properly before the division [Division of Labor Standards Enforcement] or the Labor Commissioner. . . ."
Administrative agencies have only such powers as have been conferred on them, expressly or by implication, by Constitution or statute. (Ferdigv. State Personnel Bd. (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224,453 P.2d 728].) The Labor Code generally gives the Division of Labor Standards Enforcement (of which the Labor Commissioner is the chief) the authority to enforce the provisions of the Labor Code and all state labor laws the enforcement of which is not specifically vested in any other officer, board, *Page 822 
or commission. (§§ 21, 79, 82, 95.) None of the claims at issue in this appeal alleged violation of any provision of the Labor Code or other state labor laws.
Defendants rely on section 96, subdivision (d) (fn. 4, ante), which on its face does not give the Labor Commissioner authority to adjudicate
misrepresentation claims but rather calls for the Labor Commissioner to"take assignment" of claims for misrepresentation of conditions of employment.
Even assuming for the sake of argument that plaintiffs' claims for fraud in the inducement could be characterized as "conditions of employment," section 96 does not confer jurisdiction on the Labor Commissioner to adjudicate claims arising outside the Labor Code but rather, as courts have described the statute, calls for the Labor Commissioner "`to take assignment of employee claims with the authority to resolve all matters within its jurisdiction.'" (Post v. Palo/Haklar Associates (2000) 23 Cal.4th 942, 947 [98 Cal.Rptr.2d 671, 4 P.3d 928] (Post).)
There is a difference between assignment and jurisdiction to adjudicate. An assignment is a "transfer or setting over of property, or of some right or interest therein, from one person to another. . . ." (Ballentine's Law Diet. (3d ed. 1969) p. 100; see also Black's Law Diet. (7th ed. 1999) p. 115 [assignment is a transfer of rights].)
Section 96 does not confer jurisdiction to adjudicate but rather authorizes the Labor Commission to assert assigned rights on employees' behalf. This statute was discussed in Barbee v. Household AutomotiveFinance Corp. (2003) 113 Cal.App.4th 525 [6 Cal.Rptr.3d 406], which affirmed summary judgment in favor of an employer in an employee's civil lawsuit alleging wrongful termination in violation of public policy after the employee was fired for pursuing an intimate relationship with a subordinate. Barbee rejected the employee's argument that section 96, subdivision (k) (fn. 4, ante), which authorized the Labor Commissioner to take assignment of wage claims resulting from termination due to lawful conduct occurring during nonworking hours away from the employer's premises, prohibited employers from taking adverse action against an employee for such conduct. (Barbee, supra, 113 Cal.App.4th at p. 533.)Barbee said section 96 did not set forth an independent public policy of substantive rights but merely established a procedure for the Labor Commissioner to assert recognized rights on the employee's behalf. (113 Cal.App.4th at pp. 533-535.) While we agree with Barbee that section 96 establishes a procedure by which the Labor Commission may assert recognized rights on the employee's behalf (113 Cal.App.4th at p. 535), we respectfully disagree with Barbee's comment that section 96 "outlines the types of claims over which the Labor Commissioner shall exercise jurisdiction." (113 Cal.App.4th at p. 535, italics added.) The *Page 823 
cited authorities did not go so far as to read section 96 itself as conferring jurisdiction. Rather, Barbee said: "(See Resnik v. Anderson Miles (1980) 109 Cal.App.3d 569, 572 [167 Cal.Rptr. 340] [`Labor Code sections 96 and 98, subdivision (a), expressly allow the Labor Commissioner to take assignment of employee claims with the authority to resolve all matters within its jurisdiction']; accord California Chamberof Commerce v. Simpson (C.D.Cal. 1985) 601 F.Supp. 104, 109 [`Section 96[, subdivision] (h) at least authorizes and may require the Labor Commissioner to accept assignments of severance benefit claims, for the purpose of prosecuting such claims on behalf of the assignor-employee'].)" (Barbee, supra, 113 Cal.App.4th at p. 535.)
Thus, the authority "to take assignment" is not necessarily coextensive with jurisdiction to adjudicate. Resnik (which held a real estate salesperson claiming an unpaid commission was an employee) was cited with approval by Post, supra, 23 Cal.4th 942, for its statement that sections 96 and 98 allow the commissioner "to take assignment of employee claims with the authority to resolve all matters within its jurisdiction."[9]
(Resnik v. Anderson Miles, supra, 109 Cal.App.3d at p. 572; seePost, supra, 23 Cal.4th at p. 947 [commissioner in section 98 hearing must necessarily decide whether employment relationship exists].) BothPost and Resnik dealt with hearings on claims to recover wages/commissions. Thus, none of the cited cases held section 96 gave the Labor Commissioner jurisdiction to adjudicate the items listed in that statute that were outside the scope of a section 98 hearing for wage claims.
In determining whether section 96 confers jurisdiction on the Labor Commissioner to adjudicate the claims mentioned in the statute, we have in mind that, "A court does not determine the meaning of a statute from a single word or sentence but in context; provisions relating to the same subject must be harmonized to the extent possible. [Citation.]" (Peoplev. Anderson (2002) 28 Cal.4th 767, 776 [122 Cal.Rptr.2d 587,50 P.3d 368].)
Section 95 broadly provides that the Division of Labor Standards Enforcement, of which the Labor Commissioner is chief (§§ 21, 79) "may enforce the provisions of this code and all labor laws of the state the enforcement of which is not specifically vested in any other officer, board or commission."
The Labor Code contains various provisions, some which authorize the Labor Commissioner to represent employees in court actions against *Page 824 
employers, and others which authorize the Labor Commissioner (or a designee) to adjudicate claims. Thus, for example, section 98.3[10]
provides the Labor Commissioner "may prosecute" actions, for employees unable to hire counsel, to collect wages, penalties, demands, return of workers' tools, etc. In contrast, the Labor Commissioner's jurisdiction to adjudicate the claims that were administratively adjudicated in this case is found in section 98 (fn. 8, ante), which states the Labor Commissioner or a designee "shall have the authority to investigate employee complaints" and "may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner, including orders of the Industrial Welfare Commission, and shall determine all matters arising under his or her jurisdiction."
Sections 96 and 98 both appear in the same chapter of the Labor Code (div. 1, ch. 4, Division of Labor Standards Enforcement, §§ 79-107), which also includes section 98.8, authorizing the Labor Commissioner to promulgate regulations to carry out the chapter's provisions. The regulations contain provisions specifically governing the conduct of hearings by the Labor Commissioner under section 98, with no mention of section 96. (Cal. Code Regs., tit. 8, §§ 13501, 13502.) The section 98 administrative hearing procedure (commonly known as a "Berman hearing" after the name of its legislative sponsor) offers an administrative alternative for resolving wage claims. (Post, supra,23 Cal.4th at pp. 946-947.)
That section 96 does not address administrative adjudication is apparent from some of the items listed in the statute. Thus, section 96, subdivision (i), refers to workers' compensation awards which remain unpaid after they have become final. Such awards (which were under the exclusive jurisdiction of the Workers' Compensation Appeals Board under § 3602) require no adjudication but only enforcement. Other items listed in section 96 (wage claims and bonds) have separate statutory sources for administrative hearings, such as section 98 (for "wages, penalties, and other demands for compensation") and section 96.5 (which provides the Labor Commissioner "shall conduct such hearings as may be necessary for the purpose of Section 7071.11 of the Business and Professions Code [actions against bonds]"). Additionally, other *Page 825 
provisions of the Labor Code authorize the Labor Commissioner to issue civil wage and penalty assessments subject to review by administrative hearing. (E.g., § 1741 [public works projects].) Yet another provision of the Labor Code (§ 96.7 [collection of wages without assignment]) was held to authorize the Labor Commissioner to collect unpaid wages against a contractor's payment bond (which is used in public works projects as a practical substitute for a mechanic's lien), even without an assignment of rights. (Department of Industrial Relations v. Fidelity Roof Co. (1997)60 Cal.App.4th 411, 426-427 [70 Cal.Rptr.2d 465]; 1 Marsh, California Mechanics' Lien Law (6th ed.) § 6.17, pp. 6-24.12, 6-24.13.) It is not clear whether section 96.7 would also apply to mechanics' liens, for which jurisdiction generally lies in the superior court. (Cal. Const., art. XIV, § 3 [Legislature shall provide for speedy and efficient enforcement of mechanics' liens]; Code Civ. Proc., § 392, subd. (a)(2) [superior court in county where property is located is the proper court for trial of actions for the foreclosure of liens]; Civ. Code, §§ 3109-3154 [mechanics' liens]; Civ. Code, § 3152 [statutory provisions for enforcement of mechanics' lien do not affect claimant's right to maintain personal action to recover debt]; 44 Cal.Jur.3d (2003) Mechanics' Liens, §§ 136, 195, pp. 255, 327.)
In sum, we see nothing in section 98, or even section 96, giving the Labor Commissioner jurisdiction to adjudicate tort claims involving conduct that predated the employment relationship or unfair business practice claims under the Business and Professions Code.
Indeed, to conclude that the Legislature gave the Labor Commissioner jurisdiction of such claims would be odd, given the informal nature of the section 98 proceeding. Thus, section 98, subdivision (a), states, "It is the intent of the Legislature that hearings held pursuant to this section be conducted in an informal setting preserving the right of the parties." In a section 98 hearing, "the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no discovery process. . . . (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.)" (Cuadra v. Millan (1998) 17 Cal.4th 855, 858-859 [72 Cal.Rptr.2d 687, 952 P.2d 704], disapproved on other grounds inSamuels v. Mix (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273,989 P.2d 701].) Moreover, section 98 hearings are often conducted not by the Labor Commissioner but by a hearing officer, as was the case here.
In our view, the informal section 98 hearing process, which lacks even the basic rudiments of pretrial discovery, is not designed to adjudicate preemployment claims for fraud and misrepresentation.
We conclude the Labor Commissioner did not have jurisdiction to decide the misrepresentation or unfair business practice claims alleged in *Page 826 
plaintiffs' complaint. Accordingly, the claim preclusion aspect of res judicata does not bar plaintiffs' complaint.[11] (People v. Damon,supra, 51 Cal.App.4th at pp. 974-975.)
Although the claim preclusion aspect of res judicata does not apply, we briefly consider whether the judgment can be affirmed on a ground not urged by defendants on appeal, i.e., collateral estoppel based on the Labor Commissioner's findings that Noble and Hernandez quit. It does not appear that the findings they quit were essential to the Labor Commissioner's decisions. The identity of issues requirement of collateral estoppel asks whether identical factual allegations are at stake in the two proceedings, not whether ultimate issues or dispositions are the same. (Lucido v. Superior Court (1990) 51 Cal.3d 335, 341-342 [272 Cal.Rptr. 767, 795 P.2d 1223]; County of Los Angeles v. SouthernCal. Edison Co. (2003) 112 Cal.App.4th 1108, 1120 [5 Cal.Rptr.3d 575].) The only apparent relevance of the termination of employment in the administrative hearings was that section 203[12]
imposes a penalty on the employer if it fails to give the employee his last paycheck within a specified time after the employee quits or is discharged. Thus, it did not matter in the administrative forum whether Noble and Hernandez quit or were discharged. Accordingly, collateral estoppel does not apply to the administrative findings that Noble and Hernandez quit.
We conclude res judicata does not bar the fourth, fifth, six, and seventh counts for fraud, negligent misrepresentation, false advertising, and unfair business practices, with respect to Noble and Hernandez.
We stress our opinion does not suggest the complaint has any merit. We merely hold this was not the way to dispose of it. *Page 827 
 B. Moreno
 Plaintiffs contend the trial court erred in dismissing Moreno's claims for misrepresentation and unfair business practices on the ground the administrative tribunal found he had no employment relationship with defendants.[13] They do not dispute the finality of the administrative decision, and they do not dispute that the unchallenged administrative determination of no employment relationship precludes Moreno from relitigating the issue of employment. (§ 98.2; fn. 6, ante [failure to seek trial de novo results in binding judgment]; see also generallyJohnson v. City of Loma Linda, supra, 24 Cal.4th at p. 65; Smith v. Cityof Napa (2004) 120 Cal.App.4th 194, 199 [14 Cal.Rptr.3d 908] [failure of plaintiff to overturn administrative decision precludes plaintiff from relitigating any actual adverse determination in a subsequent action at law].) Instead, they argue that, although the complaint asserted these causes of action on behalf of "employees" (which the complaint defined to include Moreno), that designation should not be controlling. Plaintiffs contend that, even if Moreno never worked for defendants as an employee, he was still defrauded by them, in that they "induced" him to leave his home and job in Mexico and travel to the USA to assist in setting up defendants' restaurant. However, the misrepresentation claims (fraud, negligent misrepresentation, and false advertising) and the derivative unfair business practice claim which was based on the misrepresentation claims, as alleged in the complaint, were based on claims of fraudulent inducement of an employment contract. Each count, either expressly or by incorporation of preceding allegations, alleged plaintiffs worked for defendants. The absence of an employment relationship is fatal to those claims as to Moreno.
 Elsewhere in their brief, under the heading discussing the unfair business practices claim, plaintiffs cite Moreno's allegation, in his claim for breach of the covenant of good faith and fair dealing, that defendants "encourag[ed] MORENO to share trade secrets and recipes. . . ." They say that, although Moreno dismissed his claim for breach of the covenant, the same allegations were incorporated by reference into the count alleging unfair business practices. However, in their reply brief, plaintiffs say the individual claims of Moreno are not at issue with respect to the unfair practices claim, because they are "claims whichappellant voluntarily dismissed at the hearing before the trial court andwhich are not at issue in this appeal." *Page 828 
 Accordingly, we see no basis to reverse the judgment with respect to Moreno.
III. Intentional Infliction of Emotional Distress
Plaintiffs contend the trial court erred in granting judgment on the pleadings as to the eighth count for intentional infliction of emotional distress, even though plaintiffs on the date set for trial were unable to identify the person who allegedly placed a threatening phone call to deter Joaquin Noble from attending the Labor Commissioner hearing. We shall conclude the contention lacks merit.
A motion for judgment on the pleadings may be made at any time up to and including the time of trial, and may be made on the same grounds as a demurrer (Stoops v. Abbassi (2002) 100 Cal.App.4th 644, 650 [122 Cal.Rptr.2d 747]), e.g., that the complaint is uncertain and fails to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subds. (e)-(f)-)
The eighth cause of action for intentional infliction of emotional distress alleged that on March 11, 2004, four days before the administrative hearing date before the Labor Commissioner, "an individual associated with defendants" called Maria Noble by telephone and warned her that Joaquin Noble should not appear to testify against defendants. The caller allegedly revealed he knew the Nobles' address and the name of their daughter and allegedly threatened that if Joaquin testified, Maria's daughter would be injured.
The eighth count alleged the "acts and omissions of each of the Defendants" were intentional. However, the eighth count did not allege any acts or omissions by defendants. Instead, it alleged only acts by "an individual associated with defendants."
When the case came on for trial, defendants moved for judgment on the pleadings, on the grounds the complaint was uncertain as to who was alleged to have made the alleged call and whether it took place in Mexico (raising jurisdictional issues).
As observed by the trial court in granting judgment on the pleadings, the complaint did not allege that defendants authorized or even knew about the alleged call. The Nobles' counsel admitted to the trial court that the Nobles had no idea who made the alleged call. We reiterate this admission was made after the discovery stage of the case, when the case was called for trial. Thus, although the matter was raised in a motion styled as a motion for judgment on the pleadings, the Nobles wanted to go to trial with no evidence *Page 829 
whatsoever as to who made the alleged call, or whether it was made with the knowledge or consent of defendants. The Nobles' theory was that the only persons who would benefit from the alleged threat were defendants and therefore they must be liable.
On appeal, the Nobles argue the trial court erred, because the "pertinent question is whether [defendants] had sufficient notice to investigate the claim. . . ." The Nobles claim it does not matter that they cannot identify the caller, because the "circumstances" suffice to identify the person's association with defendants. Borrowing from defamation law, the Nobles cite authority that if (defamatory) statements do not identify the defamed person by name, it is sufficient (and necessary) for the defamed person to allege in his or her defamation lawsuit that the words were spoken about him or her (colloquium).
In response, defendants correctly point out this is not a defamation case, and the defamation law principle of colloquium has no application to this case. Indeed, the Nobles admit this in their reply brief, by criticizing defendants for discussing defamation law in their respondents' brief, even though it was the Nobles who tried to inject defamation law into this case in their opening brief.
The problem for the Nobles is that they think they have enough to go to a jury based on their assumption that defendants must have had something to do with the alleged phone call because the alleged phone call was intended to benefit defendants. However, the Nobles' assumption is false. The fact that a person benefits from something does not mean he had anything to do with it. A friend acting on his/her own may have done it in a misguided attempt to help the person. An enemy may have done it in an attempt to get the person in trouble. A friend or enemy of therecipient of the phone call may have done it as a misguided joke or for purposes of mischief.
This is why the complaint was uncertain, and the case does not present a jury question. It is not enough to allege that a person "associated with defendants" made a call without also alleging (and proving) that defendants knew about and authorized the call. Thus, contrary to the Nobles' argument, they have not presented a question for the jury to decide.
We conclude the trial court correctly dismissed the eighth count for intentional infliction of emotional distress.
 DISPOSITION
The judgment is affirmed in its entirety as against Manuel Moreno. The portion of the judgment entering judgment on the pleadings in favor of *Page 830 
defendants on the eighth count (intentional infliction of emotional distress) is affirmed. The portion of the judgment dismissing the fourth, fifth, sixth, and seventh counts is reversed as to plaintiffs Joaquin Noble and Jose Antonio Hernandez.
Plaintiffs Joaquin Noble and Jose Antonio Hernandez shall recover their costs from defendants. (Cal. Rules of Court, rule 8.278(a)(1).) As to the other plaintiffs, they and defendants shall bear their own costs. (Cal. Rules of Court, rule 8.278(a)(5).)
Morrison, J., and Cantil-Sakauye, J., concurred.
[1] Undesignated statutory references are to the Labor Code.
[2] In a footnote in their opening brief on appeal, plaintiffs say the motion was brought without proper notice. We disregard points not adequately briefed. (Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974,979 [21 Cal.Rptr.2d 834].)
[3] We disregard plaintiffs' assertion that they argued defendants were delinquent in paying the administrative awards. The assertion is not supported by the cited portion of the record, and in any event, that claim is not part of this lawsuit.
[4] Section 96 provides: "The Labor Commissioner and his or her deputies and representatives authorized by him or her in writing shall, upon the filing of a claim therefor by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of: [¶] (a) Wage claims and incidental expense accounts and advances. [¶] (b) Mechanics' and other liens of employees, [¶] (c) Claims based on `stop orders' for wages and on bonds for labor, [¶] (d) Claims for damages for misrepresentationsof conditions of employment. [¶] (e) Claims for unreturned bond money of employees, [¶] (f) Claims for penalties for nonpayment of wages. [¶] (g) Claims for the return of workers' tools in the illegal possession of another person, [¶] (h) Claims for vacation pay, severance pay, or other compensation supplemental to a wage agreement. [¶] (i) Awards for workers' compensation benefits in which the Workers' Compensation Appeals Board has found that the employer has failed to secure payment of compensation and where the award remains unpaid more than 10 days after having become final, [¶] (j) Claims for loss of wages as the result of discharge from employment for the garnishment of wages. [¶] (k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises." (Italics added.)
[5] The five threshold requirements of collateral estoppel are: (1) the issue to be precluded must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated at that time; (3) the issue must have been necessarily decided; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be in privity with the party to the former proceeding. (People v. Garcia (2006) 39 Cal.4th 1070, 1077 [48 Cal.Rptr.3d 75, 141 P.3d 197].)
[6] Section 98.2 provides in part: "(d) If no notice of appeal of the order, decision, or award is filed within the period set forth in subdivision (a) [10 days after service of notice of the order, decision, or award], the order, decision, or award shall, in the absence of fraud, be deemed the final order.
"(e) The Labor Commissioner shall file, within 10 days of the order becoming final pursuant to subdivision (d), a certified copy of the final order with the clerk of the superior court of the appropriate county unless a settlement has been reached by the parties and approved by the Labor Commissioner. Judgment shall be entered immediately by the court clerk in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all of the provisions of law relating to, a judgment in a civil action, and may be enforced in the same manner as any other judgment of the court in which it is entered."
[7] Both sides in this appeal appear to accept the finality of the administrative orders.
[8] Section 98, subdivision (a), provides in part: "The Labor Commissioner shall have the authority to investigate employee complaints. The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner, including orders of the Industrial Welfare Commission, and shall determine all matters arising under his or her jurisdiction. It shall be within the jurisdiction of the Labor Commissioner to accept and determine claims from holders of payroll checks or payroll drafts returned unpaid because of insufficient funds, if, after a diligent search, the holder is unable to return the dishonored check or draft to the payee and recover the sums paid out."
[9] Resnik's holding about the real estate salesperson being an employee was questioned in Grubb Ellis Co. v. Spengler (1983)143 Cal.App.3d 890, 896 [192 Cal.Rptr. 637]. That issue is not material to this appeal.
[10] Section 98.3 states: "(a) The Labor Commissioner may prosecute all actions for the collection of wages, penalties, and demands of persons who in the judgment of the Labor Commissioner are financially unable to employ counsel and the Labor Commissioner believes have claims which are valid and enforceable. [¶] The Labor Commissioner may also prosecute actions for the return of worker's tools which are in the illegal possession of another person. [¶] (b) The Labor Commissioner may prosecute action for the collection of wages and other moneys payable to employees or to the state arising out of an employment relationship or order of the Industrial Welfare Commission, [¶] (c) The Labor Commissioner may also prosecute actions for wages or other monetary benefits that are due the Industrial Relations Unpaid Wage Fund."
[11] We therefore need not resolve plaintiffs' claim that res judicata is made inapplicable by section 98.7, subdivision (f), which states: "The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law."
[12] Section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with [specified sections], any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her . . . is not entitled to any benefit. . . ."
[13] An obvious clerical error appears in the trial court's order, which states the Labor Commissioner's decision that Moreno "was in an employer-employee relationship" with defendants precludes him from consideration in the misrepresentation and unfair business practices causes of action, which on their face are limited to "employees." The Labor Commissioner found Moreno was not an employee, and the court order obviously meant to say that. *Page 831