Filed 7/8/14  Certified for publication 8/6/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA REBOLLEDO, | |
| Plaintiff and Respondent, | G048625 |
| v. | (Super. Ct. No. 30-2012-00616290) |
| TILLY'S, INC. et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Steven L. Perk, Judge.  Affirmed.

Sheppard, Mullin, Richter & Hampton, Ryan D. McCortney and David Van Pelt for Defendants and Appellants.

The Cooper Law Firm and Scott B. Cooper; The Carter Law Firm and Roger R. Carter; The Phelps Law Group and Marc H. Phelps for Plaintiff and Respondent.

Tilly's Inc. and World of Jeans & Tops, Inc. (hereafter collectively referred to in the singular as Employer) appeal from the trial court's order denying its motion to compel arbitration of Maria Rebolledo's putative class action regarding statutory wage claims. We agree with the trial court's conclusion the parties' arbitration agreement expressly excluded statutory wage claims from the arbitration obligation. The order is affirmed.

I

Employer hired Rebolledo to work in its warehouse from July 6, 2000, to December 28, 2001. She was rehired on January 28, 2002, and terminated October 30, 2012. In December 2012 she filed a lawsuit on behalf of herself and a putative class of "similarly situated" persons. In February 2013 she filed a first amended complaint, the operative complaint, alleging the following four causes of action against Employer: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay wages of terminated or resigned employees; (4) knowing and intentional failure to comply with itemized wage statement provisions; (5) violations of the unfair competition law; and (6) enforcement of Private Attorneys General Act of 2004.

A. *Motion to Compel Arbitration*

On March 20, 2013, Employer filed a motion to compel arbitration and dismiss the class claims. It supplied the arbitration agreement Rebolledo signed in 2004 (hereafter the 2004 Agreement). Rebolledo opposed the motion arguing the agreement expressly excluded the claims made in her lawsuit and was invalid. In addition, Rebolledo argued the agreement was unconscionable for the following reasons: (1) due to language barriers, she did not understand the terms; (2) the agreement did not attach any rules of arbitration or specify which rules applied; (3) the agreement lacked mutuality and unfairly favored Employer; (4) it was an adhesion contract; and (5) it was substantively unconscionable.

2

To support her opposition, Rebolledo attached her declaration written in Spanish. The translation provided to the court stated, "I speak almost no English. I do not read or write in English. Spanish is my first and only language. All of my oral communications with my supervisors . . . have been in Spanish." She added that at various times during her employment she was given documents to sign. She declared, "These documents were presented to me by one of my superiors. The contents of the documents were not explained to me, and the superiors told me not to worry about the documents because they contained nothing bad. I was told that I was required to sign these documents. I witnessed co-workers of mine being presented with documents to sign in the same way."

Rebolledo did not recall signing the 2004 Agreement and she believed, "I was given this document with no explanation of what the document said, no opportunity to ask questions about it, and not enough time to review and consider the document before signing. I also believe I was told that I was required to sign the document." Rebolledo stated she could not read or understand the 2004 Agreement because it was written in English.

In its reply motion, Employer refuted all the points raised by Rebolledo. In addition, Employer provided evidence Rebolledo signed two additional arbitration agreements on June 28, 2001 (hereafter the 2001 Agreement), and on August 15, 2005 (the 2005 Agreement). The Employer noted Rebolledo also executed an employment application in July 2000 in which she agreed to sign an arbitration agreement if she were to be employed. Employer asserted all the arbitration agreements contained in bold capital letters above the signature line a clear warning to Rebolledo that she was giving up her right to a jury trial and to appeal the arbitrator's decision.

*1. 2001 Employment Application & Employment Agreement.*

Rebolledo's employment application requested her employment history and contained four paragraphs written in very small type font immediately above the space

3

provided for her signature. She placed her initials next to each paragraph. The first paragraph related to certifying the information provided in her employment history. The second paragraph authorized Employer to investigate her references and background. The third was an agreement to arbitrate any disputes arising out of submission of the application. In addition, it stated "I understand that if I am offered employment . . . I will be asked to sign a mediation/arbitration agreement that applies to disputes arising from my employment with [Employer]." The fourth paragraph clarified the application was not an employment contract.

Rebolledo started working June 7, 2000. On June 28, 2001, she signed a two-page document entitled, "Tilly's Employment Agreement." The first page contained the statement employment was at will and a provision stating Rebolledo agreed to read and follow the terms contained in the Employer's handbook. The remaining page and one-half were devoted to information regarding mediation and arbitration.

In the 2001 Agreement the parties agreed to mediate "any dispute arising out of" employment, except "workers' compensation claims, unemployment insurance[,] and matters governed by the California Labor Commissioner[.]"

The arbitration provision provided as follows: "Arbitration. In the event mediation does not resolve the parties' dispute, Employee and [Employer] agree to submit all disputes arising from employment (excepting workers' compensation claims, unemployment insurance[,] and matters governed by the California Labor Commissioner), including[,] but not limited to breach of contract, wrongful termination, violation of public policy, discrimination, and harassment to binding arbitration with the American Arbitration Association ('AAA') under the AAA National Rules for the Resolution of Employment Disputes."

The next paragraph stated Orange County, California was the proper venue for any arbitration proceedings. The 2001 Agreement provided: "If Employee and [Employer] are unable to agree on a neutral arbitrator, [Employer] will obtain a list of

4

arbitrators from [AAA]. Employee (first) and then [Employer] will alternately strike names from the list until only one name remains."

In the next paragraph, the parties agreed Code of Civil Procedure section 1283.05 would govern discovery conducted before arbitration and the arbitrator would conduct a hearing based on AAA rules. The Employer stated the arbitrator would issue a written opinion and award. "Employee and [Employer] agree that arbitration is the exclusive forum for resolving all disputes arising out of or involving Employee's employment with [Employer] or the termination of that employment, including, but not limited to, actions for [w]rongful [t]ermination, [d]iscrimination, [h]arassment, or any violation of public policy (with the exception of claims for workers' compensation, unemployment insurance and any matter within the jurisdiction of the California Labor Commissioner); provided, however, that either party may file a request with a court of competent jurisdiction for 'provisional remedies', including, but not limited to injunctions and restraining orders, pending resolution of any dispute through the arbitration procedure set forth herein." Because it is relevant to our analysis anon, we point out the 2001 Agreement defines the type of claims excluded from arbitration as including both "matters governed by" and "matter[s] within the jurisdiction" of the California Labor Commissioner. In drafting the agreement, Employer treated the two phrases as being interchangeable.

The final paragraph of the 2001 Agreement discussed the payment of arbitration costs and fees: "[Employer] agrees to pay all reasonable arbitration costs that would exceed costs Employee would pay in court. The parties are responsible for their own attorney[] fees." The final statement of the agreement, written in capital letters and bold type, stated, "Employee and [Employer] acknowledge they are giving up their right to a jury trial and to appeal the arbitrator's decision." (Capitalization and bold omitted.) The agreement contained Rebolledo's signature but Employer did not sign it.

5

*2. The 2004 Agreement*

Rebolledo was rehired on January 28, 2002. In March 2004, during this second period of employment, she signed a half-page document entitled, "employmentagreement [*sic*]." It contained the following short paragraph: "Employee and [Employer] agree that arbitration is the exclusive forum for resolving all disputes arising out of or involving Employee's employment with [Employer] and the termination of that employment, including, but not limited to, actions for [w]rongful [t]ermination, [d]iscrimination, [h]arassment, or any violation of public policy (with the exception of claims for workers' compensation, unemployment insurance and any matter within the jurisdiction of the California Labor Commissioner); provided, however, that either party may file a request with a court of competent jurisdiction for 'provisional remedies', under Code of Civil Procedure [s]ection 1281.8, pending resolution of any dispute through the arbitration procedure set forth herein." (Italics omitted.) As in the 2001 Agreement, Employer agreed to pay whatever arbitration costs exceeded the costs of litigation and specified each side would bear their own attorney fees. The final statement of the agreement, written in capital letters and bold type, stated, "Employee and [Employer] acknowledge you are both giving up your right to a jury trial and to appeal the arbitrator's decision." (Capitalization and bold omitted.) The agreement contained Rebolledo's signature and the signature of the Employer's director of human resources. It did not contain many of the details concerning arbitration described in the 2001 Agreement.

*3. The 2005 Agreement*

On August 15, 2005, Rebolledo signed the Employer's "handbookacknowledgement [*sic*]." Like the 2004 Agreement, the document is half a page long and contains the identical arbitration provisions, with one exception: This document does not include the phrase exempting from the agreement "any matter within the jurisdiction of the California Labor Commissioner." Other than the title, there is no

other mention of a handbook within the document. Rebolledo signed the document. There was no place on the agreement for Employer's signature.

Counsel for Rebolledo filed a response arguing the reply brief contained several new pieces of evidence. Counsel argued these documents did not prove Rebolledo could read and understand English, or that she understood her dispute would be subject to arbitration. To the contrary, the evidence "confirm[ed] . . . [Employer] placed a variety of conflicting and confusing arbitration 'agreements' in front of its employees and required them to sign without ever confirming that the employees could read, let alone understand, what they were signing." Rebolledo provided a supplemental declaration (written in Spanish but accompanied by an English translation). Rebolledo stated, "I have had the opportunity to review[] a document entitled 'Employment Application,' . . . . The handwriting on the document, besides the signature and the initials to the left of the text in the bottom section of the document, is not mine. This is the handwriting of another person who read the application's questions to me in Spanish, to whom I told my answers in Spanish, and who then translated my answers and filled out the paper in English."

B. *Supplemental Briefing*

After considering oral argument the court took the matter under submission. Three days later it issued a minute order continuing the hearing 10 days to permit the parties to file supplemental briefs regarding the execution and enforceability of the 2005 Agreement.

Employer submitted a supplemental brief. It argued the court's tentative ruling was incorrect. Employer asserted the 2005 Agreement was bilateral even though it was missing Employer's signature. It maintained the 2005 Agreement was enforceable.

Rebolledo filed supplemental briefing, arguing the 2005 Agreement, like the 2001 and 2004 Agreements, was procedurally and substantively unconscionable and

7

should not be enforced. Rebolledo submitted another supplemental declaration. She repeated she did not read, write, or speak English, and Spanish was her first and only language. She spoke to her supervisors only in Spanish. She restated her recollection that her supervisors gave her documents to sign at various times during her employment. The documents were not explained to her and she was required to sign them. She remembered being told the documents contained nothing bad. She stated the 2005 Agreement "appears to contain my signature." However she clarified, "While I do not have a specific recollection of signing this document, I have noticed on the 'handbook acknowledgment' [2005 Agreement] that the blank titled 'Employee Signature' is not in my handwriting. I believe this document was presented to me by Maria Pena, a former supervisor. Ms. Pena would occasionally bring documents around for me to sign while at [her place of employment], and she always did it while I was working on the line. I was just told that the Company required me to sign, so I should sign, and I did." Rebolledo clarified no one explained what the document said, she had no opportunity to ask questions about it, and she was not given time to review it. She was told signing was a requirement. She was not given a copy of the document and it was "presented to [her] with no opportunity for translation." She added, the Employer's personnel, including but not limited to Ms. Pena, were aware she could not read or write English and could speak very little English. "All of my communications with them were in Spanish."

## C. The Trial Court's Ruling

The trial court issued a minute order denying Employer's motion to compel arbitration. It ruled as follows with respect to the 2001 Agreement: (1) the 2000 employment application was superseded by the 2001 Agreement; (2) the 2001 Agreement was not translated for Rebolledo; (3) the 2001 Agreement "expressly exclude[d] 'any matter within the jurisdiction of the California Labor Commissioner.' The Labor Commission['s] jurisdiction is not limited to claims filed by a [l]itigant[]"; (4) "This language of the [2001] Agreement is broad enough to include claims that have not been

8

filed[]"; (5) "The Commission can also assert its jurisdiction on matters under its own authority. The current claims could be subject to the Commission['s] jurisdiction and are, therefore, expressly excluded[]"; and (6) "By its express terms the Agreement survived [Rebolledo's] termination."

With respect to the 2004 Agreement, the court made the following findings: (1) "The language of this 2004 Agreement does not by its terms supersede the 2001 Agreement[]"; (2) The 2004 Agreement "expressly excludes 'any matter within the jurisdiction of the California Labor Commissioner.' The Labor Commissioner's jurisdiction is not limited to claims filed by a [l]itigant. This language of the 2004 Agreement is broad enough to include claims that have not been filed. The Commission can also assert its jurisdiction on matters under its own authority. The current claims could be subject to the Commission's jurisdiction and are, therefore, expressly excluded[]"; (3) the agreement is "expressly unenforceable due to the lack of signatures of the 'President, Senior Vice President and Director of Human Resources . . .' which are needed to change the policy. This agreement clearly states that the signatures' . . . of all three must by obtained.' There are no [Employer's agents] signatures on this agreement. It lacks mutuality."

The court also determined the 2005 Agreement was unenforceable, stating, "This document is a modification of the prior agreements because the language in the [2005 Agreement] is changed. It, however, does not expressly supersede the 2001 and 2004 Agreements. Although plaintiff has signed the document there is no indication that the document was translated for her or that she understood the terms of the handbook. (Her declaration attached to the opposition indicates she does not speak or understand English and did not understand the term 'arbitration'.)"

The court also noted, "The 2001 . . . Agreement (which is never stated to be superseded) requires the signatures of [three] executives of [Employer] to modify it and they are not on this document. Although the [E]mployer can unilaterally modify an

9

employment contract there must be reasonable notice of their intent to do so and that is lacking here.  This [2005 Agreement] also is illusory in that it does not state or identify the rules of the arbitration to be conducted which are material term[s] missing from the agreement."

II

*A.  Applicable Law and Standard of Review*

"There is a strong public policy in favor of arbitration.  [Citations.]  [¶] Under both the [FAA] [citation] and the California Arbitration Act (CAA; [citation]), arbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally.  [Citations.]'  [Citation.]  '"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  [Citations.]'  [. . . see *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1518 ['[b]ecause arbitration is a contractual matter, a party that has not agreed to arbitrate a controversy cannot be compelled to do so'].)"  (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 540-541 (*Mendez*).)

"A trial court must grant a petition to compel arbitration 'if it determines that an agreement to arbitrate the controversy exists.'  [Citations.]  There is, however, 'no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate.'  [Citation.]  Thus, in ruling on a motion to compel arbitration, the court must first determine whether the parties actually agreed to arbitrate the dispute.  [Citations.]  General principles of California contract law guide the court in making this determination.  [Citations.]"  (*Mendez, supra,* 220 Cal.App.4th at p. 541.)

"'Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion.  [Citation.]  However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.  [Citation.]' [Citations.]"  (*Mendez, supra,* 220 Cal.App.4th at p. 541.)  In this case, the trial court's

10

ruling did not hinge on the credibility of any extrinsic evidence and because Employer did not dispute the assertions Rebolledo made in her declarations, the court's ruling was based on its legal interpretation of the arbitration agreements. Accordingly, our review is de novo.

B. *Legal Principles Regarding Interpretation of Arbitration Agreements*

"The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Engineers Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.) "'Whether the parties formed a valid agreement to arbitrate is determined under general California contract law. [Citations.] Hence, when ruling on a petition to compel arbitration, the superior court may consider evidence on factual issues such as contract formation bearing on the threshold issue of arbitrability. [Citation.]' [Citations.]" (*Hotels Nevada v. L.A. Pacific Center Inc.* (2012) 203 Cal.App.4th 336, 348.)

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. (Civ. Code, § 1639.) 'The words of a contract are to be understood in their ordinary and popular sense.' (Civ. Code, § 1644; see also *Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197-1198 ['We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made'].)" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) "Finally, ambiguities in standard form contracts are to be construed against the drafter. [Citations.] This court must apply [the above] basic principles [of contract interpretation] to determine whether [Rebolledo's] causes of action

11

fall within the scope of the arbitration clause." (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 738 [arbitration has become "accepted and favored" method, "[h]owever, judicial enthusiasm for alternative methods of dispute resolution must not in all contexts override the rules governing the interpretation of contracts"].)

*C. Within the Labor Commissioner's Jurisdiction*

The court determined the 2001 and 2004 Agreements did not compel arbitration of Rebolledo's claims because both agreements "expressly exclude[d] 'any matter within the jurisdiction of the California Labor Commissioner.'" The court determined this provision was broadly written to include any statutory wage claim not actually filed with the Labor Commissioner, as long as the claim theoretically could have fallen within the Labor Commissioner's authority. The court reasoned the various Labor Code violations raised in the case were of the type that could have been considered by the Labor Commissioner, and therefore, were exempted from arbitration. Before addressing Employer's assertion the court was wrong, a brief summary of the Labor Commissioner's scope of authority and jurisdiction is instructive.

"The California Labor Commission is part of the Department of Labor Standards and Enforcement (DLSE), which is under the Department of Industrial Relations. The DLSE enforces wage and labor standards and all labor laws not specifically delegated to another agency (e.g., Fair Employment and Housing Administration, Division of Occupational Safety and Health, or Division of Workers' Compensation)." (Judith S. McIlwee, *Circuit City Meets the California Labor Commissioner: Does the FAA Preempt Administrative Claims?* (2004) 40 Cal.W.L.Rev. 383, 396.)

"[I]f an employer fails to pay wages in the amount, time, or manner required by contract or statute, the employee may seek administrative relief by filing a wage claim with the [Labor Commissioner] or, in the alternative, may seek judicial relief by filing an ordinary civil action for breach of contract and/or for the wages prescribed by

12

statute." (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946 (*Post*).) With respect to the first alternative, the Labor Commissioner has broad authority to reject, investigate, adjudicate, or litigate (on behalf of the employee), depending on the nature of the employee's claim. (See Lab. Code, §§ 96, 96.7, 98, 98.3, 1193.6.)[1]

"[S]ection 98 includes remedial procedures for *adjudicating* wage claims, enforced by the [DLSE] under the direction of the [C]ommissioner. It states that the [C]ommissioner 'shall have the authority to investigate employee complaints.' (. . . § 98, subd. (a).) The [C]ommissioner 'may provide for a hearing in any action to recover wages, penalties, and other demands for compensation.' (Ibid.) [¶] . . . [¶] If the [C]ommissioner decides to accept the matter and conduct an administrative hearing— commonly known as a 'Berman hearing' after the name of its sponsor, then Assemblyman Howard Berman—he or she must hold the hearing within 90 days . . . ." (*Post, supra,* 23 Cal.4th at p. 946.) "The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. [Citation.] [As explained by our Supreme Court,] 'the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims.' [Citation.]" (*Id.* at p. 947.)

In addition to conducting a Berman hearing, the Labor Commissioner has the option of filing a civil action. (§§ 98.3 & 1193.6 [action to recover unpaid wages].) When the Labor Commissioner takes action to collect wages or benefits on behalf of a worker, the Commissioner acts as a trustee of the monies collected and has an affirmative duty to make a diligent search to locate any worker for whom unpaid wages or benefits have been collected. (§ 96.7.)

---

[1]     All further statutory references are to the Labor Code, unless otherwise indicated.

13

The Legislature has also empowered the Labor Commissioner to enforce the labor laws (including IWC Wage Orders), by (1) issuing subpoenas compelling witness attendance and production of documents, (2) accepting assignment of wage and other claims such as enforcement of workers' compensation awards, mechanics' liens, etc., (3) collecting wages and benefits without the worker's assignment, (4) seeking injunctions against willful violations of state wage and hour laws.  (See Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2013) ¶ 11:1342, p. 11-150 to 11-151.)

Certain employment matters cannot be considered by the Labor Commissioner.  The Commissioner has the duty to determine if the employee's claim falls within his or her jurisdiction before proceeding forward.  For example, section 98 authorizes the Labor Commissioner to only "prosecute" claims "properly before" the Commissioner.  It specifies the Labor Commissioner "shall determine all matters arising under his or her jurisdiction."  (§ 98, subd. (a)).  Some examples of employment matters that do not fall within the jurisdiction of the Labor Commissioner are:  (1) claims involving bankruptcies or probate; (2) claims involving mechanics, loggers, or minors; (3) preferred wage claims in assignment for the benefit of creditors; (4) discrimination and retaliation complaints under sections 98.6, 132a, 432.2, 6310-6312; or (5) matters where criminal or civil citations are issued such as for child labor law violations, unlicensed contractors, payday violations, welfare benefits, etc.  (See Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, ¶ 11:1351, p. 11-152.)

That there are definite limits to the Labor Commissioner's jurisdiction was demonstrated in *Noble v. Draper* (2008) 160 Cal.App.4th 1, 12-13 (*Noble*).  In that case, the court held the Labor Commissioner has no jurisdiction "to adjudicate tort claims involving conduct that predated the employment relationship or unfair business practice claims under the Business and Professions Code."  (*Id.* at p. 16.)  The case involved foreign restaurant workers who brought an action claiming defendant induced them to

14

come to the United States and work in a restaurant but they were terminated and not compensated for their work. (*Id.* at p. 6.) The workers first pursued claims for unpaid wages before the Labor Commissioner. (*Id.* at p. 7.) Following the administrative hearing, the workers filed a civil action alleging fraud, negligent misrepresentation, false advertising, intentional infliction of emotional distress, and a statutory claim of unfair business practices under the Business and Professions Code. Defendant argued that after choosing an administrative forum, the workers' claims were barred by res judicata. (*Ibid.*) The court disagreed. It reasoned, "Administrative agencies have only such powers as have been conferred on them, expressly or by implication, by Constitution or statute. [Citation.] The Labor Code generally gives the [DLSE] (of which the Labor Commissioner is the Chief) the authority to enforce the provisions of the Labor Code and all state labor laws the enforcement of which is not specifically vested in any other officer, board, or commission. (§§ 21, 79, 82, 95.) None of the claims at issue in this appeal alleged violation of any provision of the Labor Code or other state labor laws." (*Noble, supra,* 160 Cal.App.4th at pp. 12-13.) The court concluded the civil action was not precluded by the worker's prior pursuit of wage claims before the Labor Commissioner.

In the case before us, the parties agree Rebolledo's claims fall within the Commissioner's jurisdiction. Rebolledo alleged Employer failed to (1) provide meal periods and rest periods "or wages in lieu thereof" in violation of sections 226.7 and 512; (2) pay wages of terminated or resigned employees as required by sections 201 and 202; and (3) comply with itemized wage statement provisions in violation of section 226 and 1174, subdivision (d). She alleged these violations entitled her to recover civil penalties under the Private Attorneys General Act of 2004 (§§ 2698 et. seq).

Section 95 provides the Labor Commissioner "may enforce the provisions of [the Labor Code] and all labor laws of the state the enforcement of which is not specifically vested in any other officer, board or commission." Clearly Rebolledo sought

15

enforcement of various Labor Code provisions and labor laws in her lawsuit. Her statutory wage claims fall into the category of "matters governed by" and "matter[s] within the jurisdiction" of the Labor Commissioner.

*D. Statutory Wage Claims Expressly Excluded from the Arbitration Agreement*

Employer admits the 2001 and 2004 Agreements explicitly exclude certain claims from the arbitration obligation. It asserts these exceptions do not apply in this case and Rebolledo's statutory wage claims must be arbitrated. We disagree.

The sole issue presented in this appeal is simply a matter of contract interpretation. We will begin by considering the 2001 Agreement. The parties generally agreed to arbitrate all employment disputes but excluded several types of employee claims from arbitration. The 2001 Agreement expressly exempted from arbitration the following three broad categories: (1) workers' compensation claims; (2) unemployment insurance claims; and (3) "*matters governed by* the California Labor Commissioner[.]" (Italics added.) With respect to the third category of claims, the 2001 Agreement also defined them as including "*any matter within the jurisdiction* of the California Labor Commissioner[.]" (Italics added.)

On appeal, the parties offer different interpretations of the phrases "matters governed by" and "matter[s] within the jurisdiction" of the Labor Commissioner. Both sides assert the language is not ambiguous. As we will explain more fully below, we conclude the language plainly stated Rebolledo's statutory wage claims were exempted from the arbitration agreement. The phrases at issue served to define *the type* of exempted employment claims as including disputes an employee *could have brought* before the Labor Commissioner. The parties intended for employment disputes falling outside the scope of that definition to be arbitrated. We reject Employer's strained interpretation that the language served to exclude wage claims based on *the forum selected* by the employee i.e., excluding wage claims actually brought before the Labor Commissioner.

16

As explained earlier in this opinion, the scope of the Labor Commissioner's jurisdiction is limited by statute. (*Noble, supra,* 160 Cal.App.4th at pp. 12-13 [Commissioner has "only such powers as have been conferred" on him or her by Constitution or statue].)  By defining the type of excluded claims as being limited to "matters governed by" or "within the jurisdiction" of the Commissioner, the parties intended to exclude employment claims alleging violations of the Labor Code or other state labor law.  (§§ 21, 79, 82, 95.)

We reject Employer's assertion "within the jurisdiction" meant claims actually filed with the Commissioner.  When an employee's claim falls "within the jurisdiction" of the Commissioner, *the employee has the option* of filing the statutory wage claim before the Commissioner *or* in superior court.  (*Post, supra,* 23 Cal.4th at p. 946.)  The employee has two forums for bringing such claims.  Moreover, parties can agree to arbitrate statutory wage claims regardless of the chosen forum.  (See *AT & T Mobility LLC v. Concepcion* (2011) 563 U.S. 1740 (*Concepcion*); *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1124 (*Sonic-Calabasas A, II*).)[2]  Accordingly, the ordinary meaning of the phrases at issue clearly relates to defining the nature of a claim, not where it is adjudicated.  Indeed, to adopt Employer's interpretation we would have to ignore the portion of the agreement defining the exempted claims as "matters governed" by the Labor Commissioner because this terminology does not suggest a particular forum of litigation, only a type of subject matter.

---

[2]      In its opening brief, Employer argued a Berman hearing is an unwaivable right that an employee cannot be asked to relinquish in favor of arbitration.  This is no longer the law.  The United States Supreme Court, pending its *Concepcion* opinion, granted review and vacated our Supreme Court's decision *Sonic-Calabasas A. Inc. v. Moreno* (2011) 51 Cal.4th 659 (*Sonic-Calabasas A, I*).  In its reply brief, Employer acknowledges our Supreme Court reconsidered *Sonic-Calabasas A, I* in light of the *Concepcion* opinion.  (*Sonic-Calabasas A, II, supra,* 57 Cal.4th 1109.)  An employee's right to seek a Berman hearing can be waived as a condition of employment.  (*Id.* at p. 1124.)

If Employer intended to exclude only statutory wage claims brought in one forum over another it could have narrowly drafted and defined the phrases "matters governed" and "matter[s] within the jurisdiction" to mean "claims actually filed with the commissioner" or "claims being litigated in a Berman hearing." Alternatively, Employer could have clarified employee was agreeing to arbitrate "statutory wage claims not brought before the Labor Commissioner." However, without language qualifying or limiting *the forum* for statutory wage claims, an employee would reasonably understand the plain language of exclusion covered all statutory wage claims regardless of where they were adjudicated. (*Victoria, supra,* 40 Cal.3d at p. 744 [we must "'give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made'"].) We would have to rewrite the agreement to expressly limit the exclusion to claims actually filed in a particular forum. This we cannot do.

Employer argues that because the Labor Commissioner never asserted jurisdiction over Rebolledo's wage claims she must arbitrate them. Employer provides case authority describing the circumstances when the Labor Commissioner loses its jurisdiction over a worker's wage claim. These cases do not assist Employer. In *Post, supra,* 23 Cal.4th at page 947, the Supreme Court held the timely filing of *an appeal* terminates the Commissioner's jurisdiction. Similarly, in *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1117, another case cited by Employer, our Supreme Court verified the *appeal* of the Commissioner's decision is a de novo trial of the wage dispute. This case does not concern the appeal of a Labor Commissioner's award.

Employer also maintains these cases prove the Labor Commissioner lost jurisdiction of Rebolledo's lawsuit because she filed her action in superior court. This argument misses the point. The issue on appeal is not whether we should apply a "first in time" approach to jurisdiction in this case. We need not decide whether the Labor

18

Commissioner's authority to investigate wage violations is trumped once a worker files a lawsuit in superior court. In ruling on a motion to compel arbitration, we need only determine whether the parties *actually agreed to arbitrate this particular kind of dispute*. Accordingly, the dispositive issue is the clear and ordinary meaning of the phrases "matters governed" and "matters within the jurisdiction." A statutory wage claim qualifies as a "matter governed" by the Labor Commissioner regardless of whether he or she is actively adjudicating the case.

Another argument raised by Employer is that the ordinary meaning of the phrases at issue must be viewed in the context of the two other excluded administrative-type claims. Specifically, the agreement expressly excluded workers' compensation claims and unemployment insurance claims from arbitration. Employer argues the arbitration agreement did not need to define "the jurisdiction" of the administrative agencies responsible for handling those two types of claims, i.e., the California Workers' Compensation Appeals Board (WCAB) and the Employment Development Department/Unemployment Insurance Appeals Board (EDD). It explained those entities have "exclusive jurisdiction" over those types of claims but because the Labor Commissioner does not have exclusive jurisdiction over wage claims, "the language of the 2001 Agreement was necessary to clarify that only matters brought before the Labor Commissioner are excluded from the agreement to arbitrate."

Nonsense. The only reason Employer did not need to define the scope of excluded workers' compensation claims is because *all* workers' compensation claims cannot be arbitrated as a matter of law. "The Workers' Compensation Act (. . . § 3200 et seq.) generally provides the *exclusive remedy* for employee injuries incurred in the course of employment. [Citation.] [¶] When the exclusive remedy rule applies (e.g., injured employee seeking damages for workplace injury), the employee cannot bring an 'action at law.' [Citation.] [¶] *The rule also bars arbitration of such disputes.* [Citation.]" (Italics added.)

19

(Knight et al. Cal. Practice Guide: Alternative Dispute Resolution (2013) § 5:76.27, p. 5-64.6.) Thus, the Workers' Compensation Act provides the exclusive remedy, and the WCAB is the exclusive forum for resolution of any dispute over a right or liability incidental to a claim for workers' compensation benefits.

Likewise, the parties could not have agreed to process unemployment insurance claims in arbitration. The EDD has exclusive jurisdiction to investigate an employee's claim for unemployment benefits and make an eligibility determination. (See *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1024 (*American Federation*) [discussing California's unemployment insurance program "designed to provide insurance for workers 'unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum'"]; Unemp. Ins. Code §§ 301, 1326 et seq.) An appeal of the EDD's decision is heard by an administrative law judge. (Unemp. Ins. Code §§ 1334, 1335, subd. (c).) A claimant may appeal that decision to the Unemployment Insurance Appeals Board (Unemp. Ins. Code § 1328), and if still not satisfied "may then seek a limited trial de novo in the superior court in an administrative mandate proceeding." (*American Federation, supra,* 13 Cal.4th at p. 1026; Code Civ. Proc., § 1094.5.)

The same is not true for statutory wage claims. The Labor Commissioner does not have exclusive jurisdiction. Unlike other types of employment litigation (e.g., discrimination actions under the Fair Employment and Housing Act), there is no requirement that an employee exhaust administrative remedies before filing suit. (See Chin et al., Cal. Practice Guide: Employment Litigation, *supra,* ¶ 11:1441 at p. 11-160.) Consequently, adding the phrase "within the jurisdiction" does not serve to clarify Employer's purported intent to permit its employees to request an administrative Berman hearing but not litigate the very same wage claims in superior court. Whereas matters within the jurisdiction of the WCAB must be administratively adjudicated, matters within

20

the jurisdiction of the Labor Commissioner do not. Simply stated, a matter *within the jurisdiction* need not be *actually brought* before the Labor Commissioner.

Employer asserts that when the agreement was written it believed employees could not waive their right to administrative Berman hearings as a condition of employment. It recognizes this is no longer the law but asserts this was the reason "within the jurisdiction" was included in the agreement. If this was Employer's intention the arbitration agreement was poorly drafted because the language used plainly exempted all statutory wage claims regardless of the forum of litigation. "The strong policy in favor of arbitration may not be used to permit a party to enforce provisions of an arbitration agreement that, as here, either do not exist or were so poorly drafted that another party cannot be presumed to have agreed to them. [Citations.]" (*Thompson v. Toll Dublin, LLC* (2008) 165 Cal.App.4th 1360, 1370.) As stated above, there were many ways Employer could have clarified only statutory wage claims *actually brought* before the Labor Commissioner would be exempted.

Alternatively, Employer argues the court's interpretation of the arbitration agreement is erroneous because it contradicts other key portions of the 2001 Agreement. Employer notes the parties expressly agreed to arbitrate discrimination and wrongful termination claims, yet these types of claims could also qualify as Labor Code violations, falling within the Labor Commissioner's jurisdiction and exempted from arbitration. Employer concludes, "It is impossible to reconcile these two clauses under the court's interpretation. Instead, the only consistent and sensible interpretation of the 2001 Agreement is to permit [Rebolledo] to seek administrative relief for claims actually initiated to the Labor Commissioner, *not* excluding from the agreement any claim that *could* be brought before the Labor Commissioner."

As aptly stated by Rebolledo, any inconsistency would be of Employer's own making as the drafter of the agreement and it is not a reason to stray from the usual and ordinary meaning of the language stated in the agreement. More importantly, when

21

there are conflicting clauses the more specific clause controls the more general. Wrongful termination and discrimination claims do not just fall under the Labor Code. These claims may also may be brought under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.) and are arbitrable. (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, ¶ 18:515, pp. 18-63 to 18-64.) Federal statutory discrimination claims (such as those made under Title VII, ADEA, ADA, FLSA, USERRA, and whistleblower claims) are also subject to arbitration. (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, ¶ 18:505-18:512, pp. 18-62 to 18-63.) The parties could generally agree to arbitrate wrongful termination and discrimination claims, and also specifically exempt from arbitration Labor Code violations.

In any event, the dispute in this case does not relate to wrongful termination or a discrimination claim. We found no provision in the arbitration agreement discussing statutory wage claims other than the provision excluding such claim from the arbitration obligation. There is no internal conflict with respect to waiver of the statutory wage claims.

*E. The 2005 Agreement*

The court determined the 2005 Agreement was unenforceable, stating, "This document is a modification of the prior agreements because the language in the [2005 Agreement] is changed. It, however, does not expressly supersede the 2001 and 2004 Agreements. [¶] Although [Rebolledo] signed the document there is no indication that the document was translated for her or that she understood the terms of the handbook. (Her declaration attached to the opposition indicates she does not speak or understand English and did not understand the term 'arbitration'.)" The court also stated, "The 2001 . . . Agreement (which is never stated to be superseded) requires the signatures of three executives of [Employer] to modify it and they are not on this document. [¶] Although the employer can unilaterally modify an employment contract there must be reasonable notice of their intent to do so and that is lacking here. [¶] This [2005

22

Agreement] also is illusory in that it does not state or identify the rules of the arbitration to be conducted which are material term[s] missing from the agreement." Employer argues the court was wrong.

We begin by reviewing the context in which the 2005 Agreement was executed in comparison with the prior two arbitration agreements. The 2001 Agreement, unlike the 2005 Agreement, contained multiple paragraphs devoted to explaining the arbitration obligation in addition to describing the employee's other terms of employment. The 2004 Agreement repeated the same arbitration obligation, albeit with less detail, in a document also called an "employment contract." In contrast, the 2005 Agreement was contained within a one-page handbook acknowledgement form. There was no evidence, or any suggestion by either party, that arbitration terms were discussed anywhere within the handbook itself. The parties did not include a copy of the actual handbook, indicating it contained no information about arbitration. The acknowledgement form contained a one paragraph summary of the arbitration obligation. The acknowledgment was printed with the number "50" on the very bottom of the form, suggesting it was part of a larger document. Also the bottom of the document contains the statement, "Employee Copy: Remains in Employee Handbook." We can infer the acknowledgement form was likely attached to the end of the Employer's handbook. Indeed, Employer maintains the 2005 Agreement was "merely" providing a "one paragraph summar[y] of the 2001 Agreement." It does not suggest the acknowledgment's recitation of the arbitration obligation intended to be included as one of the handbook's policies.

On appeal, Employer argues the 2001 Agreement was not modified. It asserts the 2005 Agreement does not contain any material change from the 2001 arbitration terms. Employer contends the court had no legal authority upon which to base its ruling that "a short summary" of an employer's arbitration agreement "constitutes a 'modification' of the original agreement." It reasons neither the 2004 or

23

2005 Agreements expressly supersede the 2001 Agreement, suggesting it was not intended to alter the terms of the original obligation. We conclude this argument does not help Employer. If the 2005 Agreement was simply intended to contain a shortened summary of the 2001 Agreement, then it too encompasses the original exemption of statutory wage claims. We have previously ruled the parties expressly agreed to exclude statutory wage claims. The trial court properly denied the motion.

In its reply brief, Employer took a different approach, arguing the 2005 Agreement would be enforceable even if it did modify the 2001 Agreement. Employer maintains the agreement should not be struck down as unconscionable because it is well established an employer can unilaterally modify an arbitration agreement as long as the employees receive notice of the change. Employer notes the modification satisfies the covenant of good faith and fair dealing because the 2005 Agreement would not apply to unfiled statutory wage claims accruing before 2005. We need not consider the merit of this argument because the original agreement could not be modified without the signatures of three of Employer's executives.

As stated above, the 2001 Agreement expressly exempted statutory wage claims from the arbitration obligation. The 2005 Agreement does not contain this same express exemption. We agree with the trial court's conclusion that for such a material modification to be enforceable, it required the signature of three executives.

The 2001 Agreement addressed several different employment issues as follows: (1) employment was at-will; (2) employees must follow terms of the employee handbook; (3) any disputes must be first mediated; and (4) after mediation, disputes must be arbitrated. With respect to the first issue, the 2001 Agreement expressly provided the employee's employment was at will, which meant the employee could be terminated at any time, with or without cause.

The next paragraph of the 2001 Agreement cautioned: "Employee's [a]t-[w]ill status is the entire agreement between Employee and [Employer]. It supersedes all

24

prior agreements, understandings and representations concerning Employee's employment with [Employer]. Only the President, Senior Vice President and Director of Human Resources, acting together, may enter into a *different employment agreement or modify [Employer's] employment policies*. All three (3) signatures must be obtained." (Italics added.)

Employer argues the italicized portion of the above provision simply meant signatures were required in the event an employee's "at will" status was changed. Not so. The agreement plainly requires signatures to change the employee's status *or* "modify employment policies." The word "or" is a conjunction commonly used to connect clauses representing alternatives. If Employer intended to require signatures only to change an employee's status, there would be no need to include the phrase "or modify employment policies." The signature requirement is broadly written to encompass much more than a status change. A contract is to be read as a whole, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) Moreover, it is well settled contracts "are construed to avoid rendering terms surplusage. [Citations.]" (*ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co*. (1993) 17 Cal.App.4th 1773, 1785.)

We recognize the 2001 Agreement does not define what "employment policies" require the three executive signatures. We can infer from other provisions in the contract that signatures were not required to modify the policies outlined in the employee handbook, hours, wages, or working conditions. The agreement specified, "[Employer] may change any and all policies or practices" in the handbook "at any time." In addition, it gave Employer the right to change "hours, wages and working conditions at any time."

The 2001 Agreement describes in great detail the employment policy requiring the mediation and arbitration of disputes. Unlike the other employment policy provisions, there is no provision granting the Employer a similar unilateral modification

25

right to modify the arbitration terms. We agree with the trial court's interpretation of the agreement holding arbitration would fall within the broad category of "employment policies" requiring the signature of three executives for any modification. And because the 2005 Agreement contains a material modification of the types of claims that must be arbitrated, it required the signature of three executives to be enforceable.[3]

III

The order is affirmed. Respondent shall recover her costs on appeal.

O'LEARY, P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

---

[3] Based on our ruling the wage claims were expressly exempted from arbitration obligation, and our conclusion the 2005 Agreement was an unenforceable modification of the original arbitration agreement, we need not address Employer's argument the trial court also erred by concluding the agreements were unenforceable due to unconscionability concerns. Because we can affirm the court's order for the two reasons discussed in this opinion, we need not say more.

Filed 8/6/14

**CERTIFIED FOR PUBLICATION**
IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| MARIA REBOLLEDO, | |
| Plaintiff and Respondent, | G048625 |
| v. | (Super. Ct. No. 30-2012-00616290) |
| TILLY'S, INC. et al., | O R D E R |
| Defendants and Appellants. | |

Attorneys Rosa I. Vigil-Gallenberg (of Gallenberg PC), Steven M. Tindall (of Rukin Hyland Doria & Tindall), and Scott B. Cooper (of The Cooper Law Firm PC, Respondent's counsel) have separately requested that our opinion filed July 8, 2014, be certified for publication. David Van Pelt of Sheppard, Mullin, Richter & Hampton (Appellants' counsel) filed an opposition. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.