Filed 6/28/21  Estate of Schooler CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Estate of ROWENA L. SCHOOLER, Deceased. | |
| | D076490 |
| GLORIA TRUMBLE, Individually and as Trustee, etc., | |
| Plaintiff and Respondent, | (Super. Ct. Nos. 37-2007-00101775-PR-TR-NC & 37-2008-00150817-PR-TR-CTL) |
| v. | |
| R. KATHERINE SCHOOLER KERNS et al., | |
| Defendants and Appellants; | |
| JOHN SCHOOLER et al., | |
| Respondents. | |

APPEAL from judgments and orders of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Dismissed.

R. Kathrine Kerns and Jane L. Schooler, in pro. per., for Defendants and Appellants.

Law Office of James A. Bush and James A. Bush, for Respondents John Schooler et al.

No appearance by Plaintiff and Respondent Gloria Trumble.

This case is one in a number of appeals involving appellants Jane Schooler (Jane) and Katherine Schooler Kerns (Katherine) (sometimes collectively, Sisters); John Schooler (John) and E. Andrew Schooler (Andrew) (sometimes collectively, Brothers), the respondents in this appeal; and Gloria Trumble (Trumble), the successor fiduciary of their mother's estate and family trusts.[1] We previously dismissed some of the Sisters' prior appeals and expressly found two of them frivolous, sanctioning the Sisters in both of those cases.

In the current appeal, the Sisters argue issues that already have been decided against them by this court. These issues include ownership of certain real property in Nevada belonging to one of the family trusts; and removal of Jane almost *10 years* ago as successor trustee of the family trusts and as personal representative of her mother's estate, and appointment of Trumble as an independent fiduciary, after the court found a strong inference that Jane had breached her fiduciary duty in administering the trusts and estate, a finding it later confirmed.

Moreover, the Sisters' opening brief fails to follow the most basic rules of appellate procedure, which is startling given that a search of this court's records show that, beginning in October 2008 in *Schooler et al. v. Schooler et al.* (case No. D053924), Jane and/or Katherine have filed about *28* separate actions in this court involving in some manner the family trusts and/or their

---

[1]    Trumble did not file a respondent's brief in this case.

mother's estate.[2]  Nonetheless, the Sisters' opening brief does not include a fair and accurate factual and procedural summary to support their arguments; and their arguments in the brief are presented in "shotgun" fashion with little or no citation to the record, and in most instances without any legal support or analysis whatsoever.

As we explain, we conclude the Sisters' claims of error are forfeited based on their failure to (1) raise them in the trial court, and (2) follow the rules of appellate procedure in connection with their opening brief.[3] Reaching the "merits," we conclude this appeal is barred as it seeks to relitigate claims/issues already decided by this court.

---

[2]     In May 2013, the probate court found both Jane and Katherine were "vexatious litigants" under Code of Civil Procedure section 391, subdivision (b).  The Sisters obtained an order from the presiding judges of both the San Diego County Superior Court and this court on the basis they allegedly were defendants in this action and thus could proceed without a prefiling order.

[3]     The Sisters did not file a reply brief.

We therefore affirm the judgments and orders appealed from; dismiss this appeal as frivolous;[4] grant the Brothers' opposed motion for sanctions and award them attorney fees in the amount of $25,087.91; and order the Sisters to pay an additional sanction of $8,500 to the clerk of this court to offset the expenses to the government and taxpayers for this frivolous appeal.

---

[4]    Although the Brothers moved for sanctions by way of a separate opposed motion, on April 26, 2021, we notified the parties that we were contemplating imposing sanctions against the Sisters and gave the parties an additional opportunity to file briefs on this issue within 10 days of that order, noting the failure to file a brief would not be deemed as consent to the possible imposition of sanctions. (Cal. Rules of Ct., rule 8.276(c) & (d).) We also indicated in our April 26 order the parties could request oral argument, despite the fact it previously had been waived by the Sisters. On April 30, the Sisters sought "clarification" of our April 26 order asking for the "basis" on which their appeal is being considered frivolous. That same day we denied the Sisters' request for clarification, and reiterated supplemental briefing, if any, was due on or before May 6. The Brothers on May 6 filed a supplement to their motion for sanctions. The Sisters, however, did not file a supplemental brief regarding sanctions on or before May 6. Instead, on May 10 they filed a separate motion seeking $4 *million* in sanctions against not only the Brothers, but also against Trumble as trustee. On May 11, the Sisters were notified their request for sanctions was untimely and would *not* be considered by this court. (See Cal. Rules of Ct., rule 8.276(b)(1) [providing that a party's motion for sanctions under (a) of this rule "must be served and filed before any order dismissing the appeal *but no later than 10 days* after the appellant's reply brief is due" (italics added)].) The Sisters filed their reply brief on March 3, 2021.

FACTUAL AND PROCEDURAL BACKGROUND[5]

1. Prior Proceedings

In *Schooler IV*,[6] we considered the earlier appeals of the Sisters regarding the trusts and their mother's estate:

" 'A. *Removal of Personal Representative and Trustee*'

" 'Rowena Schooler (Mother) died in 2004, several years after her husband's death. In trust and will documents, Mother left her assets (in equal value) to five of her grown children, Jane, Katherine, John, Andrew, and Louis[7] . . . . Mother designated Jane, [then] an attorney,[8] as the successor trustee of Mother's two trusts . . . and the personal representative of her estate. The property in the [t]rusts consisted primarily of numerous parcels of undeveloped land in California and Nevada. The main asset of

---

[5] We grant the Brothers' January 29 and February 26, 2021 requests for judicial notice. The January 29 request includes among other documents some of this court's prior opinions in this litigation: Estate of *Schooler* (Jan. 6, 2010, D053924) [nonpub. opn.] (*Schooler I*); Estate of *Schooler* (Oct. 24, 2012, D060251) [nonpub. opn.] (Schooler *II*); *Estate of Schooler* (Nov. 15, 2013, D062217) [nonpub. opn.] (*Schooler III*); and *Estate of Schooler* (Oct. 17, 2014, D062877 & D062878 [nonpub. opn.] (*Schooler IV*). We grant the Sisters' February 26, 2021 motion to augment and request for judicial notice.

[6] See footnote 5, *ante.*

[7] Louis passed away during the years of this lengthy litigation. Andrew is the personal representative of his estate.

[8] Jane was disbarred in 2017 as a result of her actions in this litigation as successor trustee of the family trusts and personal representative of her mother's estate. (*In re Jane L. Schooler on Discipline* (Cal. Sup. Ct., May 17, 2017, case No. S239759.)

Mother's estate [then] was a residence in Del Mar, known as the Del Mar beach house.'

" 'Three years after Mother's death, Jane filed a petition seeking to close the estate and distribute the estate assets to one of the [t]rusts. The Brothers objected, challenging the estate accounting and alleging Jane breached her fiduciary duties in various ways. The Brothers also filed numerous safe harbor petitions, one of which was the subject of a prior appeal in which this court [in *Schooler I*] held the Brothers' objections to Jane's final account and their petition to remove and surcharge Jane for alleged breaches of fiduciary duty did not constitute a contest under California law.'

" 'On June 23, 2011, the probate court concluded that for 'good cause' it would remove Jane as trustee and personal representative on its own motion, citing . . . sections 8500, subdivision (b) and 15642, subdivision (a) [of the Probate Code[9]]. The probate court noted that after six years of litigation between Jane and the Brothers, the parties' " 'efforts' " to resolve the disputes " 'have gone nowhere' ' and it is " 'obvious that this is a totally dysfunctional family." '

" 'Later, in more fully explaining its reasons for removing Jane as trustee and personal representative, the probate court stated: ' "[There is] a strong inference . . . that Jane . . . has violated her fiduciary duty to exercise due diligence in the performance of her duties of carrying out the distributive provisions of the trusts and estate . . . . [¶] . . . [¶] . . . The family is totally dysfunctional and unable to cooperate, and it appears that every act by one side appears to be opposed by the other, meaning the three brothers versus

---

9      Unless otherwise noted, all further statutory references are to the Probate Code.

6

[Jane].  And the [trusts and estate] face the potential of being overwhelmed by huge attorney fees and administrative claims related to the family dysfunction and controversy.' "

" '[Additionally], [Jane] revealed at the recent hearing that she filed bankruptcy petitions for the family trust in order to prevent foreclosure upon out-of-state property.  It was represented that these facts were not previously known to the brothers . . . . [¶] . . . [¶] . . . These bankruptcies give rise to a strong inference that Jane . . . has failed to perform her duties of preserving estate assets.'

" ' "Next item is Jane . . . as a fiduciary has actively resisted efforts by the brothers to obtain information and records regarding her actions as fiduciary, and this gives rise to a strong inference that Jane Schooler has violated her duty of loyalty and to avoid a conflict of interest." '

"Next there are assets of the respective estates that have ongoing expenses and potential revenue.  And . . . there is a need for someone to manage these properties and to deal with whatever money or expenses there might be.'

" 'The probate court also made express findings that although Katherine was designated as a successor fiduciary in some of the estate and trust documents, she was not suitable to serve in that position.  The probate court explained:  " '[Katherine] is not represented by counsel, has never been represented by counsel [during the] six years of litigation.  In spite of outstanding petitions to remove Jane Schooler as trustee and executrix, Katherine has not ever filed a petition [or] other pleading seeking the appointment upon a vacancy in office.  And I note that the distribution of the trust assets to her contemplates that, I believe, her distribution is to be held in trust.  And I also note that the controversy existing among the family is

7

rather huge, complicated, and that the family, as a whole, is dysfunctional.
[¶] And based on the foregoing, I find that Katherine would not be a suitable
successor trustee or fiduciary . . . and there is an overwhelming need for an
independent fiduciary.' "

" 'With respect to a replacement trustee and personal representative,
the probate court rejected the Brothers' counsel's request that one of the
Brothers be appointed and found that none of the siblings was suitable to
serve as trustee. The probate court decided to appoint a neutral independent
representative to serve both as the personal representative and as the trustee
of the Trusts and ultimately the court selected a professional fiduciary,
Gloria Trumble, as the successor trustee of the trusts and the personal
representative of Mother's estate.'

" 'Jane filed an appeal from the orders removing her as trustee.
In *Schooler II,* we affirmed the orders removing her as personal
representative and trustee.'

" 'B. *Breach of Fiduciary Duty Judgment*'

" 'In 2011, following Jane's removal as personal representative and
trustee and the appointment of Trumble, Jane and Katherine moved to
disqualify the probate judge for bias. The probate judge denied their motions,
and Jane challenged the orders denying their motions by way of a notice of
appeal and separate petitions for writs of mandate. We dismissed Jane's
appeal and summarily denied her petitions for extraordinary relief.'

" 'Jane and Katherine sought and were denied continuances of the trial
of the Brothers' claims seeking to surcharge Jane for alleged acts of fraud and
breach of fiduciary duty. Jane's counsel also unsuccessfully attempted to
obtain from opposing counsel documents previously served on Jane when she
represented herself. The day before the trial on the Brothers' claims,

8

December 6, 2011, Jane substituted herself back in as her own attorney; however, Jane failed to appear at trial.'

" 'After the trial, on December 16, 2011, the probate court entered a judgment finding the Brothers had proved their breach of fiduciary duty and fraud claims. In its statement of decision, the probate court found Jane enriched herself to the detriment of her siblings and caused substantial harm to her siblings and loss to both the trusts and the estate. The court set forth specific and detailed examples of Jane's wrongful conduct and misuse of her authority.'

" 'The court ordered Trumble to sell and dispose of assets, including the Del Mar beach house. The court further ordered that Jane be evicted from the Del Mar beach house and that the Brothers' attorney determine whether Jane's conduct should be reported to the state bar.'

" 'C. *Appeal No. D061206*'

" 'In January 2012, by way of separate notices of appeal in the estate action and in the two trust actions [discussed *post*], Jane and Katherine appealed from the court's December 16 judgment, statement of decision and related orders. We consolidated those appeals in appeal No. D061206. (*Schooler III, supra*, D062217, fn. omitted.)'

"2. D061206 and *Schooler III*

"Jane and Katherine did not file any brief in appeal No. D061206 and, as to both sisters, the appeal was dismissed. In an unsuccessful effort to reinstate her appeal in D061206, Jane filed a proposed brief in which she attacked procedural orders made by the trial court prior to entry of the breach of fiduciary judgment and, in particular, an order denying the sisters' motion to disqualify the trial judge. We denied Jane's motion to reinstate her appeal.

9

"On April 25, 2012, the probate court entered orders directing that Jane cease representing to third parties that she was the personal representative of her mother's estate and the trustee of the two trusts and directing that Jane cease representing that the court's orders had been stayed. The order also confirmed the Del Mar beach house belongs to Mother's trust and is under Trumble's control.

"On May 10, 2012, the probate court entered a further order rescinding a quitclaim deed Katherine had executed with respect to Riverside real property owned by a corporation, which in turn was owned by the family trust. (*Schooler III, supra,* D062217.)

"On May 24, 2012, the probate court determined that Jane and Katherine's motions for a new trial had been denied by operation of law.

"Jane and Katherine appealed from the April 25, May 10, and May 24, 2012 orders, which appeal was the subject of our opinion in *Schooler III*. In their briefs in *Schooler III*, Jane and Katherine recapitulated arguments Jane asserted in the proposed brief she had attempted to file in D061206. We dismissed the appeal in *Schooler III* with respect to the order denying their motion for a new trial; because Jane and Katherine made no arguments on the merits with respect to the remaining orders, we affirmed those orders.

"In *Schooler III,* we also found that Jane and Katherine's prosecution of the appeal was both objectively and subjectively frivolous. We relied in particular on the fact that in *Schooler III* Jane and Katherine reasserted meritless arguments they had attempted to assert in D061206. We imposed on Jane and Katherine $19,485 in sanctions payable to the respondents; we also imposed on their attorney $8,500 in sanctions payable to clerk of the court." (*Schooler IV*, *supra*, D062877, at pp. 2–8.)

10

3. *Schooler IV*

"While our opinion in *Schooler III* grew out of the Brothers' breach of fiduciary duty claims against Jane and Katherine, the[] consolidated appeals [in *Schooler IV*] grow out of Jane and Katherine's separate disputes with Trumble, the personal representative of the estate and replacement trustee of the trust[s]. The appeals concern Trumble's efforts to carry out the probate court's instructions to sell the Del Mar beach house and preserve the assets of the trust[s].

"Following entry of the probate's court's order directing that Trumble sell the beach house, on April 25, 2012, Trumble obtained an order under *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 950, determining the beach house was trust property. On July 17, 2012, Trumble obtained an ex parte order permitting her, as trustee, to borrow funds using the beach house as security, which order was later superseded by a separate August 21, 2012 order confirming Trumble's power to borrow funds.

"Thereafter, Trumble filed a petition to terminate the estate proceedings. Jane and Katherine opposed the motion to terminate the estate on a number of grounds, including their contentions that the Brothers had been disinherited and that Trumble should be removed as trustee and personal representative because she had supported efforts by the Brothers to make Jane responsible for attorneys fees incurred while she was executor of the estate and trustee. The sisters also demanded an accounting of the funds Trumble had borrowed as trustee. The probate court found that in light of its earlier order determining that the beach was trust property, the estate had no assets, and terminated the estate.

11

"Although in July 2012, the appraised value of the beach house was $1,750,000, Trumble was able to obtain an all cash offer of $1,855,000 for the house, which she accepted on September 7, 2012. The probate court confirmed that sale on October 25, 2012.

"4. Issues Briefed [and Decided in *Schooler IV*]

"Our docket in appeal No. D062877 discloses a notice of appeal and three amended notices of appeal, which together seek review of no less than 18 orders entered by the probate court between July 17, 2012, and February 21, 2013. As Trumble points out in her respondent's brief in D062877, Jane and Katherine's opening brief in D062877 only addresses two of the 18 orders: the July 17, 2012 order confirming Trumble's power, as trustee, to borrow money and the October 19, 2012 order terminating probate proceedings in Mother's estate.

"Our docket in appeal No. D062878 discloses a notice of appeal and an amended notice of appeal that seek review of eight of the same orders subject to appeal in appeal No. D062877 and an April 19, 2013 judgment establishing the trust's ownership of property. Jane and Katherine's opening brief in D062878 only addresses four orders either set forth in their notices of appeal or arguably reviewable on appeal from orders set forth in the notices of appeal: once again Jane and Katherine's brief challenges the probate court's July 17, 2012 order confirming Trumble's power, as trustee, to borrow money; Jane and Katherine also challenge an August 21, 2012 ex parte order expunging a notice of action, an October 15, 2012 order establishing Trumble's ownership of the Del Mar beach house, and the October 25, 2012 order confirming sale of the Del Mar beach house." (*Schooler IV, supra,* D062877, at pp 8–10.)

12

In *Schooler IV*, we concluded the Sisters' challenge to the probate court's July 17, 2012 order permitting trustee Trumble to borrow funds secured by the beach house—on the ground that the order was granted ex parte—was moot because the July 17 order was superseded by a later August 21, 2012 order permitting the loan and from which no notice of appeal was filed; and because the beach house, and the security it represented, was sold by the probate court on October 25, 2012. (*Schooler IV, supra,* D062877, at p. 8.) Because the sisters did not obtain a stay of the sale and the house was in fact sold, we concluded there was no relief available to the Sisters with respect to the order permitting Trumble to borrow funds secured by the house. (*Ibid.*)

The Sisters in *Schooler IV* also challenged the order terminating the estate, arguing the probate court failed to require that Trumble report on disposition of estate assets. (*Schooler IV, supra,* D062877, at p. 11.) We rejected this argument because the probate court had found that the beach house was trust property and thus, that the estate in fact had no assets, which finding was fully supported by the record. (*Ibid.*)

As they do in the current case, the Sisters in *Schooler IV* once again challenged the validity of the probate court's prior determination that Jane should be removed as personal representative of Mother's estate and trustee of the trusts. The Sisters also claimed the probate court erred in directing that the beach house be sold. (*Schooler IV, supra,* D062877, at p. 10.) We noted in *Schooler IV* that those issues had been fully resolved against the Sisters in *Schooler II* and *III*. (*Ibid.*)

The Sisters also asserted that the Brothers had been disinherited. (*Schooler IV, supra,* D062877, at p. 11.) We rejected that claim, noting in *Schooler I* that the Brothers' challenge to Jane's final accounting had not

13

disinherited them and that their attempt to surcharge Jane had not been a will contest. (*Ibid*.) We did agree with the Sisters that the Brothers could not attempt to recover their own attorney fees from Jane without violating the no contest clause. (*Ibid*.) However, we noted in *Schooler IV* that there was nothing in the record showing that the Brothers thereafter had sought to recover their attorney fees from Jane. Rather, they did oppose the motion of Jane's prior attorneys to recover attorney fees the estate had incurred while she was executor. We found that opposition did not violate the no contest clause, and thus rejected this claim. (*Ibid*.)

Moreover, in *Schooler IV* we held the probate court had the power to expunge on an ex parte basis the notice of lis pendens the Sisters had recorded in an effort to prevent Trumble from selling trust assets, which sales the probate court had ordered. (*Schooler IV, supra*, D062877, at p. 5.) We thus concluded none of the issues raised by Sisters in either D062877 or D062878 had merit.

Finally, we dismissed the consolidated appeals in *Schooler IV*, and once again sanctioned the Sisters for pursuing a frivolous appeal. We ordered the Sisters to pay, as joint and several obligations, Trumble $10,260; and, as an additional sanction, to pay the clerk of this court $8,500 within 15 days after the date the remittitur issued. (*Schooler IV, supra*, D062877, at p. 15.) In so doing, we noted that the arguments advanced by the Sisters were either moot, entirely unsupported by the record, already had been finally resolved against them, or were based on a completely erroneous view of the powers of the probate court to act ex parte. (*Id.* at pp. 10–11.) We further noted that, in light of the continuous meritless objections in the probate court and the number of frivolous appeals in this court, the Sisters had "engaged in an

14

unceasing campaign designed to frustrate the probate court's orders in both the trust and estate cases." (*Id.* at p. 15.)

    5. Events Following *Schooler IV*

Mother's estate plan ultimately resulted in three different cases in San Diego County Superior Court. There was a probate case for Mother's estate, case No. PN28646, which is not the subject of this appeal. The instant appeal involves The Rowena L. Schooler Trust of 1999, (sometimes, Rowena Trust), case No. 37-2007-00101775-PR-TR-NC (case No. 1775); and The Eugene B. Schooler and Rowena Schooler Trust dated December 6, 1989 (sometimes, Family Trust), case No. 37-2008-00150817-PR-TR-CTL (case No. 0817).

    A. *Damages Against Jane*

On May 13, 2013, the probate court in case No. 1775 entered an order after trial against Jane pursuant to section 859.[10] This order followed an April 19, 2013 bench trial in which Jane did not appear. The order found that Jane "wrongfully and in bad faith took property belonging to" the Rowena Trust, that the value of such property was $1,855,000.00, and that as a consequence, Jane was liable to trustee Trumble for "damages in the amount of $3,710,000.00" under section 859. The sisters on June 12, 2013 appealed the May 13, 2013 order. This appeal, case No. D064660, was

---

[10]    This statute provides in relevant part: "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to . . . a trust, or the estate of decedent, . . . the person shall be liable for twice the value of the property recovered by an action under this part. . . . The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part." (§ 859.)

subsequently dismissed for failure to timely deposit costs for preparing the record on appeal. (Cal. Rules of Court, rules[11] 8.122(c), 8.130(b) & 8.140.)

B. *Damages Against Katherine*

On January 12, 2016, pursuant to section 859 the probate court in case No. 0817 entered an order against Katherine after a properly noticed bench trial at which Trumble (through counsel) and the Brothers appeared but not Katherine (or Jane). In this order, the court confirmed that certain real property in Nevada was owned by Tierra Del Mar Corporation, a Nevada corporation (TDMC), which in turn was wholly owned by trust B of the Family Trust. It also confirmed that other real property in Nevada was owned outright by trust B of the Family Trust.

The court entered this order after finding Katherine had "wrongfully and in bad faith taken the Nevada Properties by fraudulently representing herself as Trustee" of trust B and as Secretary of TDMC, and "transferring the Nevada Properties to herself." The court found that the value of the assets so taken was $553,333.00, and thus entered an award for trustee Trumble against Katherine in the amount of $1,106,666 as provided in section 859. Katherine did not appeal the order. The January 12, 2016 order was memorialized in a judgment in favor of trustee Trumble entered on April 26, 2016. Katherine also did not appeal the judgment.

On March 25, 2019, the probate court entered an amended and restated order based on Trumble's ex parte application filed on March 22, 2019, via "drop" (March 25 Ex Parte Order). In the March 25 Ex Parte Order, the probate court merely corrected the metes and bounds legal descriptions of two of the properties in Nevada that had been inadvertently switched, but had otherwise been properly identified, in the January 12, 2016 order. The

---

11 All further references to "rules" are to the California Rules of Court.

16

March 25 Ex Parte Order also restated Katherine's liability to Trumble as trustee for "damages in the amount of $1,106,666.00" based on the January 12 order.

In connection with the March 25 Ex Parte Order, the record shows Trumble on March 8, 2019, separately e-mailed the Brothers, but not the Sisters, that she would be seeking to amend and restate the January 12, 2016 order. It appears no date or time of the ex parte hearing was provided to the Brothers, however, ostensibly because the ex parte hearing was via "drop," as noted.

C. *Dismissal of Case No. D065506*

In November 2013, the probate court in case No. 0817 entered an order confirming the trusts owned certain real property in Nevada. The court in connection with this petition refused to award any damages. The Sisters appealed from this order in January 2014 in case No. D065506. This court dismissed the appeal in June 2015 because the Sisters had failed to obtain a prefiling order pursuant to Code of Civil Procedure section 391.7, after they had been declared vexatious litigants (as noted *ante*).

In denying the Sisters' petition for rehearing in D065506, this court recognized the issue regarding ownership of the Nevada properties had previously been decided: "This appeal is from a superior court order determining that certain undeveloped real property in Nevada that is held by a family real estate investment corporation is an asset of a Schooler family trust, of which the Schoolers and their three brothers are beneficiaries and respondent Gloria Trumble is the interim trustee. Trumble initiated the underlying proceedings after discovering that the [Sisters] had executed and recorded a series of quit claim and grant deeds purporting to transfer the real property to themselves; she sought an order determining that the property

17

was an asset of the trust.  Over the [Sisters'] written opposition, the probate court ruled in Trumble's favor.

"In their application for permission to pursue this appeal, the [Sisters] contended that the real property was never part of the trust and was in fact distributed to them, as officers and directors, in payment for services at the time the corporation was dissolved.  (But see [*Schooler II*] [recognizing that the Nevada property was part of the trust]; [*Schooler I*] [same].) . . .

"[¶] . . . Here, the superior court declared the [Sisters] vexatious in these on-going probate proceedings based on their repeated filings of unmeritorious motions, ex parte applications and petitions that it concluded were frivolous and appeared to be for the sole purpose of causing unnecessary delay in the administration of the family estate and trusts.  Although the [Sisters] were ostensibly defending themselves in this proceeding, the proceeding itself was necessitated by their own efforts to transfer ownership of the Nevada real property to themselves, without the approval of the superior court and in violation of its long-standing (and unchallenged) orders regarding the status of the Nevada property.

"Under these circumstances, the [Sisters] are fairly subject to the prefiling order requirement of Code of Civil Procedure section 391.7 [citation] and the court rejects their contention that they were not required to seek permission for leave to pursue the current appeal."

D.  *Nevada Litigation*

As noted *ante*, the January 12, 2016 order confirmed that real property in Nevada was owned by the Family Trust and/or TDMC, which entity was also owned by the Family Trust; and that Katherine had wrongfully taken these properties by representing herself as trustee of the Family Trust. Trumble filed an action in the Second Judicial District in Washoe County,

18

Nevada, seeking to enforce the January 12 order. The Nevada district court adopted the January 12 order in its entirety; "found … any deed executed by [Katherine] in her purported capacity as trustee of the trust or secretary of TDM[C] was of no legal force or effect"; and the Nevada Court of Appeals in *Kerns v. Trumble* (Nev. Ct. App., May 25, 2018, No. 71559 [nonpub. opn.]) affirmed the district court's order domesticating the foreign judgment.

Prior to the Nevada appeal, the Sisters on or about August, 17, 2012, and again on or about September 7, 2012, had filed in the San Diego County Superior Court notices of pendency of action concerning properties in California, which notices they then recorded in Clark and Washoe Counties, Nevada. Trumble in response filed an action in the Eighth Judicial District in Nevada to clear title, including motions to expunge the lis pendens. (*Trumble v. Schooler* (case No. A-12-673267-C).)

On February 4, 2013, the Nevada district court found the lis pendens were unlawfully filed in California and ordered them expunged. Despite receiving notice of the hearing date and time, the Sisters neither appeared at the hearing expunging the lis pendens, nor did they file any responsive pleading. The Sisters also did not appeal the district court's February 4 order.

6. The Current Appeal

The Sisters attached four judgments and one order to their Civil Case Information Sheet as required by rule 8.100(g)(1). There are two May 10, 2019 judgments against Jane arising from case No. 1775, one in favor of John and another in favor of Andrew, each in the amount of $1,282,748.94. Each judgment provides: "Defendant did not appear at trial. Defendant was properly served with notice of trial." As noted *ante*, these two judgments for the trust beneficiaries stemmed from the judgment for trustee Trumble

against Jane for $3,710,000.00 entered May 13, 2013, following an April 19, 2013 bench trial.[12]

The May 10 judgments were entered after Trumble on October 4, 2018 filed a verified and uncontested Fourth and Final Consolidated Account and Report of Trustee and Petition for (1) Allowance of Trustee and Attorney Fees; and (2) Distribution of Trust Assets (hereinafter, Fourth Account). In the Fourth Account that covered the period from January 1, 2017 to September 30, 2018, Trumble reported that the judgment against Jane—an asset of the trusts—had increased to $3,726,385.75; and that after offsetting Jane's 100 percent beneficial shares in the trusts—reported as $1,160,865.93 per beneficiary—against the judgment against her left a balance owing of $2,565,519.82. The probate court's December 20, 2018 order approving the Fourth Account (sometimes, Fourth Account Order) provided the judgment against Jane was to be distributed to John, Andrew, and Andrew as administrator of Louis's estate, with each entitled to receive $855,165.96.

Following the Fourth Account Order, the Brothers provided Trumble with copies of assignments that had previously been executed relating to Louis's beneficial interest in the trusts, which included his interest in the judgments against Jane (and Katherine). Trumble thus requested the judgments against Jane be distributed to John and Andrew only, with each

---

[12] As noted, the Sisters appealed the May 13, 2013 judgment. However, as also noted their appeal in case No. D064660 was dismissed for failure to deposit costs to prepare the appellate record.

receiving $1,282,748.94, as memorialized in the May 10, 2019 judgments.[13]

There also are two judgments against Katherine arising from case No. 0817 similarly dated May 10, 2019, again in favor of John and Andrew. These two judgments resulted from the April 26, 2016 judgment in favor of Trumble as trustee for $1,659,999, which judgment Katherine did not appeal. In the Fourth Account, Trumble reported that the judgment against Katherine was then $1,673,917.75; that after offsetting 100 percent of Katherine's beneficial interest in the trusts against the judgment left her owing a balance of $513,051.82; and that John and Andrew would each receive $256,514.94 as a result of the assignments by Louis.

The Sisters also attached to the Civil Case Information Sheet the probate court's Fourth Account Order (dated December 20, 2018) entered in case Nos. 1775 and 0817. As noted, the Fourth Account Order distributed to the Brothers the remainder of the monetary judgments against the Sisters, which, as summarized *ante*, led to the May 10, 2019 judgments that corrected the amount of the distributions based on the assignments by Louis's estate. The Sisters did not file any objections to the Fourth Account, either before or

---

[13]    The Brothers in their respondent's brief note there is $21.94 difference between the stated balance due on the judgment against Jane as reported in the Fourth Account ($2,565,519.82) and the Fourth Account Order (dated December 20, 2018) ($2,565,497.88). The May 10, 2019 judgments against Jane used the latter figure, which benefited Jane in this small sum and which issue the Sisters in any event did not raise in this appeal.

21

after the December 20 hearing.[14]  They also did not attend the December 20 hearing to lodge any objection.[15]

The Sisters in their notices of appeal also referenced the March 25 Ex Parte Order in which the probate court merely corrected an error in the legal descriptions of two Nevada real properties that had been inadvertently switched, as noted *ante*.  The March 25 Ex Parte Order did not change or modify the probate court's previous January 12, 2016 order confirming the trusts either directly or, through TDMC, indirectly owned these two and other real properties in Nevada.  Nor did it change the judgment of $1,106,666 against Katherine as set forth in the January 12, 2016 order, that became a judgment in favor of trustee Trumble on April 26, 2016.  Katherine also did not appeal the April 26 judgment.

DISCUSSION

I

Forfeiture

A. *Failure to Appear and Object to Judgments/Orders*

1. Jane

As summarized *ante*, the two May 10, 2019 judgments against Jane in case No. 1775 were based on the probate court's May 13, 2013 judgment for trustee Trumble following an April 19, 2013 bench trial in which Jane did *not* appear.  In addition, Jane neither filed an objection to the Fourth Order on which the May 10, 2019 judgments are based, as she failed to pay the court-

---

14    The record shows the Sisters on December 18, 2018 attempted to file an objection to the Fourth Account but that filing was rejected because they failed to pay the required filing fee.

15    The Fourth Account Order provides Trumble (through her attorney) and the Brothers appeared at the hearing "with no other appearances made."

required filing fee, nor did she appear at the properly noticed December 20, 2018 hearing in which the court considered the Fourth Account.

It is a general rule of appellate procedure that a party's failure to appear and register a proper and timely objection to a ruling or proceeding in the trial court forfeits the issue on appeal. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602 (*Bell*); *Jordan v. County of Los Angeles* (1968) 267 Cal.App.2d 794, 798 (*Jordan*) [party forfeited right to challenge action by trial court by failing to file briefs or appear for oral argument].) Stated differently, "[c]ontentions or theories raised for the first time on appeal are not entitled to consideration." (*City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528 [argument not raised below is forfeited on appeal]; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 ["[i]t must appear from the record that the issue argued on appeal was raised in the trial court" and "[i]f not, the issue is waived [or forfeited]"].)

On the record before us, we conclude that Jane forfeited any claim of error based on the May 10, 2019 judgments as a result of her failure to (1) appear at the April 19, 2013 bench trial, where the court found Jane wrongfully took trust property valued at $1,855,000.00, which amount was doubled as a penalty under section 859; (2) object to the Fourth Account or the Fourth Account Order; and (3) appear at the December 10, 2018 hearing in which the court considered the Fourth Account. (See *Bell*, *supra*, 226 Cal.App.3d at p. 1602; *Jordan*, *supra*, 267 Cal.App.2d at p. 798.)

2. Katherine

As noted, the two judgments against Katherine arose out of a January 12, 2016 order in case No. 0817 following a properly noticed bench trial that

23

Katherine did *not* attend. The court in the January 12 order confirmed that certain real property in Nevada was trust property; that Katherine had "wrongfully and in bad faith taken the Nevada Properties by fraudulently representing herself as Trustee" of one of the trusts; and that the value of the assets so taken was $553,333, which amount was doubled as a penalty under section 859 for an April 26, 2016 judgment of $1,106,666 that Katherine did not appeal. Similar to Jane, Katherine did not object to the Fourth Account or the Fourth Account Order, nor did she appear at the December 20 hearing that led to the May 10, 2019 judgments in favor of the Brothers.

On this record, we also conclude that Katherine forfeited any claim of error based on the May 10, 2019 judgments as a result of her failure to (1) appear at the January 12, 2016 bench trial; (2) object to the Fourth Account and Fourth Account Order; and (3) appear at the December 20, 2018 hearing. (See *Bell*, *supra*, 226 Cal.App.3d at p. 1602; *Jordan*, *supra*, 267 Cal.App.2d at p. 798.)

3. Remaining Orders

For the same reason, we conclude the Sisters' forfeited any claim of error with respect to the December 20, 2018 Fourth Account Order, which order led to the May 10, 2019 separate judgments against the Sisters.

The Sisters in their notices of appeal also referenced the March 25 Ex Parte Order in which the probate court merely corrected a transcription error in the legal descriptions of two Nevada real properties that had been inadvertently switched. Significantly, the March 25 Ex Parte Order did not change or modify the probate court's previous January 12, 2016 order confirming (1) the trusts either directly or— through TDMC—indirectly owned these two and other real properties in Nevada; and (2) the judgment against Katherine for $1,106,666.

24

Although the Sisters did not receive notice of the March 25 ex parte hearing, as it was conducted via "drop" with no parties present, because the March 25 Ex Parte Order was a nonsubstantive change to a previous order that they failed to object to, we conclude any claim of error regarding the March 25 Ex Parte Order was likewise forfeited. (See *Bell*, *supra*, 226 Cal.App.3d at p. 1602; *Jordan*, *supra*, 267 Cal.App.2d at p. 798.)

4. Claim of Error Based on Section 17200

The Sisters argue that the court erred in distributing the proceeds of the trusts in the May 10, 2019 judgments because the distribution was *required* to be completed by separate petitions under section 17200, as there are two trusts, rather than in a consolidated petition and a single account.

We also conclude the Sisters also have forfeited this argument on appeal because they failed to (1) appear and object to the Fourth Account on this or any other basis; and/or (2) cite any legal authority to support their argument. (See *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 (*Collins*) [noting that "parties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived [or forfeited]"].)

Even if considered, we find this argument lacking in merit. First, the Sisters' argument contravenes the plain language of section 17200. Subdivision (a) of this statute provides a trustee or beneficiary of the trust "*may* petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust." (§ 17200, subd. (a), italics added.) Thus, the unambiguous language of subdivision (a) of section 17200 clearly provides a trustee or beneficiary of a trust with the discretion to proceed under section 17200 concerning the affairs of a trust, including,

25

but not limited to, "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust" (*id.*, subd. (b)(4)); "[s]ettling the accounts and passing upon the acts of the trustee, including the exercise of discretionary powers" (*id.*, subd. (b)(5)); and "[i]nstructing the trustee" (*id.*, subd. (b)(6)).

Second, the Sisters do not explain how they possibly could have been prejudiced as a result of Trumble not filing a separate petition under section 17200, but instead proceeding with a consolidation of the accountings for the trusts in a verified petition (i.e., the Fourth Account) in a laudable effort to "reduce the costs involved in the administration of the [t]rusts." In addition, consolidating the accountings for the trusts in the Fourth Account also appears to have been the trustee's previous practice as to the second and third consolidated accounts. We thus reject on the merits the Sisters' argument that Trumble was required to file separate petitions under section 17200 when seeking court approval to distribute the trusts' assets, rather than proceeding with a consolidated accounting and petition.

B. *Failure to Adhere to the Rules of Appellate Procedure*

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Ibid.*)

On appeal, a brief must include appropriate citations to the facts in the record. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) "Because '[t]here is no duty on this court to search the record for evidence' [citation], an appellate court *may* disregard any factual contention not supported by a

26

proper citation to the record [citation]." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379.)

We recognize the Sisters are appearing in propria persona in this appeal, as we have noted. Their status as such does not, however, exempt them from the rules of appellate procedure or relieve them of their burden on appeal. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*) [noting self-represented litigants "must follow correct rules of procedure" and their failure to do so forfeits any challenge on appeal].)

As part of their appellate burden, the Sisters were obligated to provide a statement of facts in their opening brief in conformance with rule 8.204(a)(2)(C), which requires a "summary of the significant facts limited to matters in the record." However, the "Statement of Facts" in the Sisters' opening brief was half-a-page in length, bereft of any citations to the record, and in no way summarized in a neutral manner the extensive factual and procedural history of this case, as we have done *ante*.

Instead, the opening paragraph of the Sisters' Statement of Facts provides: "Respondents accomplished what they set out to do with the 859's. The use of California Probate Code section 859 against Appellants has been the main issues on appeal. As far as we can see, the Court of Appeal have [*sic*] never addressed or even mentioned the 859's."

The Statement of Facts further provides: "There were 859s on all the property with large double damages judgments except the Riverside Lot, respondents dropped from any accounting and court papers. The respondents and their attorney's [*sic*], with help, set out to overturn our parents['] estate plan and take all the properties and money, in addition to any other property of the Appellants. [¶] The purpose of Probate Code section 859 is to prevent

27

elder abuse. In all the cases reviewed the property in question was outside the decedent[']s estate when the decedent died, this is the elder abuse part. The purpose of the statute appears to be to stop the looting of elders['] estates, when they are weaken[d] by illness or age. This is clearly not the case here."

As is evident, the Sisters failed to set forth all material evidence in their factual summary. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1246; see also *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [requiring a party to include both favorable *and* unfavorable facts in the summary of facts].) Thus, to the extent the Sisters claim the probate court's findings are unsupported, including its findings that Jane and Katherine separately engaged in wrongful conduct in connection with the trusts and their mother's estate that led to valid judgments against each of them under section 859, as summarized *ante*, we conclude they have forfeited these claims on appeal. (See *Nwosu*, at p. 1246.)

In addition, the Sisters' opening brief—to the extent we can understand their arguments—in most instances failed to include any citation to legal authority and/or any reasoned analysis in support of their various claims of error, which, as we have noted, was presented in "shotgun" fashion. For this additional reason, we conclude the Sisters forfeited most, if not all, of their claims of error in this appeal. (See *Collins, supra*, 30 Cal.App.4th at p. 1448 [parties forfeit issues or claims on appeal by failing to include in their briefs argument and citation to authority].)

## II

### Claim/Issue Preclusion

As noted in the Sisters' Statement of Facts, their main contention on appeal is that the probate court erred in finding they separately engaged in

28

wrongful conduct in connection with the trusts and their mother's estate, resulting in penalties under section 859 equal to twice the value of the property involved/recovered. Assuming these claims of error were not forfeited, we nonetheless conclude the Sisters are barred from pursuing them.

The term " 'res judicata' " is often used "as an umbrella term encompassing both claim preclusion and issue preclusion, which [is] described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

" ' "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." ' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).)

Here, we conclude the Sisters' claims of error based on the May 10, 2019 judgments are barred by issue preclusion/collateral estoppel. First, the issues sought to be precluded from relitigation—the Sisters' separate wrongful conduct giving rise to a penalty under section 859 that was the subject of the May 10, 2019 judgments—are identical to the issues previously decided at the April 19, 2013 bench trial that was memorialized in a May 13,

29

2013 judgment against Jane; and at the January 12, 2016 bench trial, which was memorialized in a separate April 26, 2016 judgment against Katherine.

Second, the separate wrongful conduct of the Sisters was actually litigated and necessarily decided in the former proceedings, as noted *ante*. In addition, the decisions in the former proceedings are final and were a result of a judgment on the merits, inasmuch as Jane's appeal of the May 13, 2013 judgment in case No. D064660 was dismissed, and Katherine did not appeal the April 26, 2016 judgment. Finally, the Sisters were parties in all of the proceedings.

Based on these undisputed facts, we therefore independently conclude that the Sisters are precluded from relitigating the validity of the May 10, 2019 judgments for the Brothers. (See *Boeken*, *supra*, 48 Cal.4th at p. 797; see also *Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 [application of the doctrine of issue preclusion or collateral estoppel is a question of law subject to de novo review]; *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667 [same].)

For the same reason, we conclude the Sisters are barred from relitigating issues regarding (1) ownership of various real property in Nevada, as that issue was previously litigated and resolved on the merits by the probate court in the April 26, 2016 judgment that the Sisters did not appeal; and (2) removal of Jane as successor trustee of the trusts and the personal representative of her mother's estate, and the appointment of Trumble as an independent fiduciary, as those two issues were previously litigated and finally resolved on the merits, as summarized *ante*.

III

Sanctions

A. *Guiding Principles*

As we noted at the outset, the Brothers have moved for sanctions by way of separate motion and we have separately provided the parties with notice that we were considering imposing sanctions on the Sisters including dismissing their appeal as frivolous. (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318 (*Brar*); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 (*Flaherty*).) As a court of review, in considering sanctions we are governed by rule 8.276[16] and Code of Civil Procedure section 907.[17]

The standards for determining whether an appeal is frivolous are set forth in *Flaherty*. An appeal may be found frivolous and attorney fees awarded when the appeal (1) "is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment," or (2) "indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Flaherty, supra*, 31 Cal.3d at p. 650.)

In *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534 (*Kleveland*), we set forth the principles governing our express power to impose monetary sanctions under rule 8.276(a) and Code of Civil Procedure

---

[16]    Rule 8.276(a) provides in part: "On motion of a party or its own motion, a Court of Appeal may impose sanctions . . . on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay; [and] [¶] (2) Including in the record any matter not reasonably material to the appeal's determination."

[17]    Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

section 907: "In explaining these provisions, our Supreme Court has explained 'an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' [Citation.]

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. [Citation.] Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit. [Citation.]

"The objective and subjective standards 'are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' [Citation.] An unsuccessful appeal, however, ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law." ' [Citation.]" (*Kleveland, supra,* 215 Cal.App.4th at pp. 556–557.)

When sanctions are warranted, in determining their amount we may consider such factors as " ' "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in

32

the future." ' [Citations.]" (*Kleveland, supra,* 215 Cal.App.4th at p. 558.)

However, "[r]espondent[s] . . . are not the only parties damaged when an appellant pursues a frivolous claim. Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. [Citations.] Accordingly, an appropriate measure of sanctions should also compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. [Citations.]" (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17.)

B. *Analysis*

Objectively, the arguments advanced by the Sisters lack merit. As we have discussed, these arguments are either forfeited, as the Sisters failed both to object to the judgments and orders appealed from and to follow basic rules of appellate procedure in presenting their case in their opening brief; or are barred by claim/issue preclusion, as summarized *ante*.

Subjectively, as was the case in their previous appeals including in *Schooler III* and *IV*, the record in the instant case once again shows that the Sisters continue to frustrate the probate court's administration of the trusts. By way of example only, the Sisters engaged in wrongful and bad faith conduct that led the court to impose substantial penalties against each of them under section 859; attempted to transfer trust assets to themselves, requiring the trustee to file two actions in Nevada to establish the true owner of the real property in Nevada and to expunge the lis pendens that the Sisters caused to be recorded in that state; and once again, as they did in *Schooler III* and *IV*, reargued issues that already have been decided, in some

33

cases about a decade ago, all of which has caused substantial delay in the administration of the estate plan and unnecessary costs both to the estate and the other parties. Thus, the record more than amply supports a finding of subjective bad faith by the Sisters. (See *Kleveland, supra,* 215 Cal.App.4th at pp. 556–557.)[18]

Because the Sisters' appeal is both objectively and subjectively frivolous, we dismiss it. (See *Brar, supra,* 115 Cal.App.4th at pp. 1319–1320.) Moreover, the attorney fees incurred by respondents, the impact of the unnecessary delay of these trust and estate proceedings on the parties, and the need to deter future misconduct all support imposition of substantial sanctions against the Sisters. Accordingly, we impose sanctions on the Sisters of $25,087.91 payable to the Brothers, which amount is the attorney fees they incurred in connection with this latest appeal. We also impose as further sanctions the estimated $8,500 cost of processing this appeal to compensate the government and the taxpayers for the Sisters' frivolous appeal. (See *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520 [noting a cost analysis undertaken by the Second Appellate District

---

[18] As noted *ante* in footnote 4, on this court's own motion the parties were invited on or before May 6, 2021, to file supplemental briefing regarding the possible imposition of sanctions against the Sisters. Rather than file a supplemental brief on or before May 6, the Sisters on May 10 filed a separate motion against the Brothers and Trumble. In their motion, the Sisters requested $4 million in sanctions based on the "current fair market value" of various Nevada properties that they claim were sold and distributed in violation of an automatic stay and that preliminary title reports showed were either owned by them and/or TDMC. Because the Sisters' sanctions motion was untimely, this court did not consider their request. However, in this court's view the Sisters' May 10 sanctions motion is further evidence of their subjective bad faith, as they continue to reargue issues that already have been fully litigated and resolved against them.

indicated the cost of processing an appeal that results in an opinion by the court was approximately $8,500].)

DISPOSITION

The consolidated appeal is dismissed. As sanctions for pursuing a frivolous appeal, Jane and Katherine shall, as joint and several obligations, (1) pay respondents John and Andrew $25,087.91; and (2) within 15 days after the date the remittitur is issued, pay the clerk of this court $8,500. The clerk of this court is directed to place the sums paid by the Sisters in the general fund.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.